### State of Vermont v. Matthew S. Quinn

[675 A.2d 1336]

No. 94-675

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed March 22, 1996

*Dan M. Davis*, Windham County State's Attorney, and *James Maxwell*, Deputy State's Attorney, Brattleboro, for Plaintiff-Appellant.

*Robert Appel*, Defender General, and *William A. Nelson*, Appellate Attorney, Montpelier, for Defendant-Appellee.

**Dooley, J.** Defendant was charged with possession of a destructive device, a homemade pipebomb filled with smokeless gunpowder, in violation of 13 V.S.A. § 1604. The trial court dismissed the charge, concluding that because the device was made with gunpowder, it fell within an exception to the crime set forth in 13 V.S.A. § 1603(2). The State appeals the trial court's ruling. We reverse.

The facts are not in dispute. On July 23, 1994, the state police received a call from a custodian of Bellows Falls Union High School, who told the police that he had found a pipebomb on the school's front doorsteps. The pipebomb was seven inches in length and one-inch in diameter. It was made out of smokeless gunpowder from shotgun shells, paper, and a hollow metal broom handle capped with wax. A witness had observed two boys running away from the front entrance of the school, and then saw a smoking object on the front school doorsteps. Although smoke emanated from the pipebomb, it did not explode. A trooper questioned defendant Matthew Quinn, who admitted making the pipebomb, but denied that he intended to destroy property or endanger other people. He told the officer that he sought only to make a noise, like that of a firecracker. On July 28, 1994, the State charged defendant with possession of a destructive device in violation of 13 V.S.A. § 1604, a felony that imposes a maximum sentence of ten years.

The sole issue on appeal[1] is whether a pipebomb made of smokeless gunpowder is a "destructive device" pursuant to 13 V.S.A. § 1604, which states: "A person who manufactures, possesses, stores or transports a destructive device . . . shall be imprisoned for not more than 10 years . . . ." The term "destructive device" is defined in § 1603(1)(A) to include any "explosive . . . bomb." The State alleges that the device defendant placed on the schoolhouse doorstep fits within the definition and, therefore, defendant possessed a destructive device.

Defendant responds that because the explosive ingredient of the pipebomb is smokeless gunpowder it is not a destructive device as defined in 13 V.S.A. § 1603(1)(A). First, § 1603(1) states that "A destructive device does not include a firearm or ammunition therefor." Second, the term "explosive," a component part of the definition of destructive device, is itself defined to exclude "a firearm or ammunition therefor or any components of ammunition for a firearm including primers, smokeless powder or black gunpowder." From these statutory provisions, defendant argues that the plain meaning of the statutory scheme is that a bomb made from smokeless gunpowder is not a destructive device and, therefore, he did not violate § 1604. The trial court accepted defendant's argument and dismissed the case.

■ The outcome of this case depends upon how we construe 13 V.S.A. §§ 1603(1)(A), 1603(2) and 1604. On the one hand, we do not want to substitute a general definition of "explosive" for a specific definition supplied by the Legislature. See *In re Spring Brook Farm Found., Inc.*, 164 Vt. 282, 289, 671 A.2d 315, 320 (1995). On the other hand, we must be careful not to import definitions from inapplicable statutes. See *Secretary v. Handy Family Enters.*, 163 Vt. 476, 484, 660 A.2d 309, 314 (1995). Although we have adopted a number of aids to determine the proper construction of statutes, they are not rigid rules. See *Board of Trustees of Kellogg-Hubbard Library v. Labor Relations Bd.*, 162 Vt. 571, 575, 649 A.2d 784, 786 (1994). Overall, our aim is to implement the intent of the Legislature to the extent we can determine it. See *State v. Therrien*, 161 Vt. 26, 31, 633 A.2d 272, 275 (1993).

In this case, defendant relies upon what he perceives to be the "plain meaning" of the words of the statute. Even if we agreed that

---

[1] On appeal, the State withdrew its argument concerning a motion made pursuant to V.R.Cr.P. 12(d)(1). Accordingly, we do not address that issue.

the plain meaning rule is hard and fast, we cannot conclude that it applies here. Defendant's main argument is that the term "explosive," as defined in § 1603(2), is a component part of the definition of "destructive device," as set forth in § 1603(1)(A), and that an explosive, as so defined, cannot be made of smokeless gunpowder. We note, however, that the term "explosive" is defined as a noun in § 1603(2) but is used as an adjective in § 1603(1)(A). Moreover, the definition section applies to a number of statutory sections in chapter 37 of Title 13. In many, the term "explosive" is used as a noun and clearly embodies the definition of § 1603(2). See 13 V.S.A. § 1606 (regulating possession and use of "an explosive"); *id.* § 1607 (regulating sale of "an explosive"); *id.* § 1608 (use of "an explosive" to injure); *id.* § 1609 (requiring license to "give, transfer or sell an explosive"). Thus, the definition of "explosive" as a noun in § 1603(2) performs an important function in chapter 37 without necessarily controlling the definition of "destructive device" in § 1603(1)(A).

The difference in usage might not alone dissuade us from defendant's interpretation. In this case, however, the definition of destructive device was taken, almost verbatim, from a federal statutory model. See 18 U.S.C. § 921(a)(4). As the State points out, the legislative history indicates this source of our statutory language. See Minutes, Senate Judiciary Committee Hearing on H.236 (April 13, 1971) (statement of Senator West: "This is copied, as I understand it, out of the federal statutes."); see also *Massachusetts Municipal Wholesale Elec. Co. v. State*, 161 Vt. 346, 355, 639 A.2d 995, 1002 (1994) (legislative history may be used to aid statutory construction). There is no indication in the federal statute that the term "explosive" is defined narrowly, as in 13 V.S.A. § 1603(2), in defining, in turn, a "destructive device."[2]

We have encountered before the difficulties created when statutory models are integrated with locally drafted provisions. See *State v. Papazoni*, 159 Vt. 578, 582, 622 A.2d 501, 503 (1993). As we said in *Papazoni*, the result "often does not produce a 'seamless web.'" *Id.* (quoting *Martel v. Stafford*, 157 Vt. 604, 609, 603 A.2d 345, 348 (1991)). We are reluctant to conclude that the Legislature intended to distort the federal definition of destructive evidence by subjecting it to a special, narrow definition of explosive.

---

[2] The federal statute, although it contains many definitions, does not define "explosive." See generally 18 U.S.C. § 921(a). It does provide a comprehensive scheme for regulation of firearms and ammunition so it is unnecessary to exclude these items from its coverage. See generally *id.* §§ 922-926.

140

There is another important reason to reject defendant's construction of the statutes. In adopting the federal definition of destructive device, the Legislature added narrowing language to address the policy underlying defendant's argument. The added language states that a "destructive device does not include a firearm or ammunition therefor." 13 V.S.A. § 1603(1). The point of this language is to make clear that a firearm or its ammunition is not a destructive device so that possession of these items is not a crime. This language is superfluous if the term "explosive," as used in defining destructive device, embodies the definition of "explosive" in § 1603(2) because that definition includes the identical language.

It is particularly significant that the limitation added to the § 1603(1) definition of "destructive device" does not include the language contained in the definition of "explosive" covering "components of ammunition for a firearm including primers, smokeless powder or black gunpowder." 13 V.S.A. § 1603(2). We take this omission as an indication that the Legislature did not intend to create an exception for bombs made from components of ammunition, exactly the situation that is present here. *In re Stowe Club Highlands*, 164 Vt. 272, 280-81, 668 A.2d 1271, 1277 (1995) (where ordinance goes only so far in authorizing reconstruction of nonconforming use, we infer drafters intended to prohibit reconstruction in other circumstances).

█ Finally, if possible, we must avoid construing statutory language in a way that produces an irrational result. See *State v. Blondin*, 164 Vt. 55, 57, 665 A.2d 587, 589 (1995). It is reasonable and understandable why the Legislature would be clear that it did not want to criminalize possession of firearms and ammunition. On the other hand, we can conceive of no reason why the Legislature would make it a crime to manufacture or possess a dangerous bomb made from nitroglycerine while imposing no criminal consequences on the manufacture or possession of an equally dangerous bomb made from gunpowder. Although we construe penal statutes most favorably to the accused, we do not do so to defeat legislative intent or reach an absurd result. See *State v. Frechette*, 161 Vt. 233, 234, 637 A.2d 1080, 1081 (1993). We believe that defendant's construction produces an irrational result which we should avoid.

█ The term "explosive" is not normally defined to contain any limits on the tendency to explode. See American Heritage Dictionary at 463 (1979). Thus, except for a "firearm or ammunition therefor," 13

V.S.A. § 1603(1), any explosive bomb is a destructive device as defined in § 1603(1) and used in § 1604. The district court erred in dismissing this case on the pleadings.

*Reversed and remanded.*

**Allen, C.J.,** dissenting. I believe that a reasonable doubt exists regarding the intended meaning of the statutes after examination of "the language and structure, legislative history, and motivating policies," and therefore conclude that the rule of lenity should be applied. *Bifulco v. United States,* 447 U.S. 381, 387 (1980).

For purposes of 13 V.S.A. § 1604, "'Destructive device' means any: (A) explosive, incendiary or poison gas bomb . . . ," and "'Explosive' . . . does not include . . . any components of ammunition for a firearm including primers, smokeless powder or black gunpowder." 13 V.S.A. § 1603(1)(A) & (2). It is reasonable to construe the statute such that the word "explosive" in the definition of destructive device is defined under "explosive." Therefore, the statute supports a reasonable construction that contradicts that espoused by the majority.

Where there is an ambiguity in a statute "which admits of two reasonable and contradictory constructions, that one which operates in favor of the person accused under its provisions is to be preferred." *State v. Baldwin,* 109 Vt. 143, 148, 194 A. 372, 374 (1937); cf. *State v. Oliver,* 151 Vt. 626, 629, 563 A.2d 1002, 1004 (1989) (penal statutes are strictly construed in manner favorable to accused). I would affirm.

I am authorized to state that Justice Johnson joins in this dissent.