## Dorothy and Raymond GRANGER v. TOWN OF WOODFORD

[708 A.2d 1345]

No. 97-200

March 10, 1998. Plaintiff landowners Dorothy and Raymond Granger appeal a Bennington Superior Court order granting defendant Town of Woodford's motion for summary judgment. Landowners contend that the court erred in concluding that town's decision to establish a commercial zone was a constitutional exercise of town's police powers. We affirm.

On March 1, 1994, a majority of town's electorate voted to change the zoning classification of a .82 acre parcel of land owned by David and Rosalie Wright from "Rural Residential" to "Roadside Commercial." This parcel of land is used to operate an automobile repair shop out of a three-bay garage. Until 1994, there were several parcels of land that contained pre-existing, nonconforming commercial uses within Woodford, including landowners' antique business and a motel. There were, however, no parcels of land zoned for commercial use.

Landowners filed a complaint for declaratory judgment with the Bennington Superior Court, alleging that the creation of the "Roadside Commercial" district was unconstitutional because it constituted unlawful spot zoning. Landowners and town filed cross-motions for summary judgment. The court, concluding that the rezoning was not unconstitutional, granted town's summary judgment motion. This appeal followed.

Spot zoning consists of zoning that "single[s] out a small parcel or perhaps even a single lot for a use classification different from the surrounding area and

inconsistent with any comprehensive plan, for the benefit of the owner of such property." *Galanes v. Town of Brattleboro*, 136 Vt. 235, 239, 388 A.2d 406, 409 (1978). In an equal protection clause challenge based on the federal constitution[1] that alleges impermissible spot zoning, the plaintiff has the burden of demonstrating that the zoning classification is not "related to the public health, safety, morals or general welfare." *Id.* at 240, 388 A.2d at 410. Furthermore, if the trial court grants a motion for summary judgment, we will apply the same standard as the trial court, in reviewing the grant of summary judgment. See *Madden v. Omega Optical, Inc.*, 165 Vt. 306, 309, 683 A.2d 386, 389 (1996). Thus, the granting of summary judgment will be affirmed if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. See *Wesco, Inc. v. Hay-Now, Inc.*, 159 Vt. 23, 26, 613 A.2d 207, 209 (1992).

In the present case, the trial court relied on the four-factor test that we have previously authorized trial courts to use to assist them in determining whether the zoning classification of a specific parcel of land is unconstitutional. See *Smith v. Town of St. Johnsbury*, 150 Vt. 351, 360-61, 554 A.2d 233, 240-41 (1988). As we noted in *Smith*, while "[w]e do not have to adopt a precise definition of spot zoning to decide this case," these four elements will be factors in any test. *Id.* at 362, 554 A.2d at 241. These elements are: (1) whether the use of the parcel is very different from the prevailing use of other parcels in the area; (2) whether the area of the parcel is small; (3) whether the classification is for the benefit of the community or only to provide a specific advantage to a

particular landowner; and (4) whether the change in the zoning classification complies with the municipality's plan. See *id.* at 360-61, 554 A.2d at 241. The trial court found that while the "small size of the Wrights' parcel may work in favor of the [landowners'] claims, this one factor is far outweighed by" the facts that (1) the Wrights' use of their land was not very different from the surrounding uses; (2) there was a discernible public benefit; and (3) the change in the zoning classification may not have "significantly conflict[ed] with the town plan."

A review of the record clearly indicates support for the trial court's findings and conclusion. First, at the time the Wrights' zoning classification was changed, there were two other parcels of land within the town that were also used for commercial purposes. In fact, they were located on the same heavily-travelled road — Route 9 — and within one mile of the Wrights' parcel. Second, the use of the Wrights' zone for a commercial purpose will provide a benefit to the community, i.e., an increase in the town's tax base and an in-town garage and inspection station. Admittedly, the Wrights have also benefited from the reclassification. The Wrights' benefit, however, does not render the reclassification unconstitutional, because there also is a rationally-related benefit to the community. We also note that the majority of the town's electorate voted in favor of the Wrights' reclassification. This provides some indication that the town's citizens anticipated a potential benefit Third from this reclassification. See *id.* at 362, 554 A.2d at 241 ("There is certain irony in a claim that a zoning classification voted for by a majority of the residents of the town provides no benefit to the community, but instead is solely for the advantage of [the owner of the reclassified parcel].").

Third, the reclassification does not "significantly conflict" with the town's plan. See *id.* at 361, 554 A.2d at 240 ("Zoning is

---

[1] The Fourteenth Amendment of the United States Constitution states in part: "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws."

properly conceived of as the partial implementation of a plan of broader scope [; therefore, it] must reflect the plan, but it need not be controlled by it."). Land suitable for development in the Town of Woodford is severely limited by federal and state ownership and topography. Town's boundaries encompass thirty-six square miles, of which eighty-eight percent is owned by the federal government and administered by the United States Forest Service. In addition, 400 acres is located within the Woodford State Park. The topography of the land located within town's boundaries consists of steep, forested hills and mountains and shallow bedrock. This topography renders a large portion of town's land unsuitable for development due to the lack of proper sewage disposal. With the exception of a few isolated areas within town's boundaries, the only land suitable for development is located along Route 9.

According to the 1989 Woodford Town Plan, the plan in existence at the time of the reclassification:

> The various land uses proposed in this document should be located on land best suited for them, and in areas in which they will be logically grouped, related to topography, to existing development, and to anticipated and planned patterns of future growth. . . .
>
> Land uses should be provided with area appropriate and sufficient to their needs, and each should be protected from any adverse effects of others. Commercial uses should be oriented to complement community objectives and policies while contributing to a balanced economy and adequate tax base.
>
> To encourage the location and type of economic activity which will complement existing settlement, and have least pollutant characteristics. To encourage economic activity to service the residents of Woodford. To encourage commercial and recreational activity that complements the natural landscape and existing land use, and does not burden the community with unreasonable service or facility demands. To limit commercial activity to those areas committed to such use at the time of the original Town Plan and Zoning laws.
>
> Rather than permit such uses in any zone along Route 9, specific Roadside Commercial Districts are designated to accommodate such uses. The purpose of this approach is to allow from time to time, various types of development to those commercial properties existing as commercial properties at the time of the original Town plan and Zoning Bylaw. This would have the effect of reducing the potential for strip development, protecting non-commercial properties along Route 9, and to avoid classifying existing commercial properties as non-conforming, thus allowing opportunity for expansion.

Admittedly, the Wrights' business was not in existence at the time the original town plan and bylaws were adopted, but this inconsistency does not per se place the reclassification in "significant conflict" with the town plan. It is clear from the plan that the town recognizes the importance Route 9 plays in its economic viability. Because of this potential, the plan permits and encourages "Roadside Commercial Districts" that have access to Route 9. Due to the lack of land suitable for development and because the Wrights' land is located on Route 9 and is near other parcels that are currently be-

ing used for commercial purposes, the reclassification does not "significantly conflict" with the town plan. Finally, while the Wrights' parcel is relatively small, we agree with the court that on balance the other three factors substantially outweigh this factor.

We conclude that due to the lack of land suitable for development, the benefits provided to the community, the other commercial uses in the immediate vicinity, and the reasonable reflection of the town plan, the reclassification of the Wrights' parcel is rationally related to the public's general welfare and, therefore, is not "unreasonable, irrational, arbitrary or discriminatory beyond dispute."[2] *Smith*, 150 Vt. at 361, 554 Vt. at 240.

*Affirmed.*

---

[2] Because landowners fail to adequately brief the equal protection challenge based on the Vermont Constitution, we do not address this claim. See *Bishop v. Town of Barre*, 140 Vt. 564, 579, 442 A.2d 50, 57 (1982).