### In re Margaret Susan P.

[733 A.2d 38]

No. 98-145

Present: Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.

Opinion Filed May 14, 1999

*Michael S. Gawne* of *Brown, Cahill, Gawne & Miller, P.C.*, St. Albans, for Plaintiff-Appellant.

*Kurt M. Hughes* of *Murdoch & Hughes*, Burlington, for Defendant-Appellee.

**Dooley, J.** This case requires us to define the rights of access of an adult adoptee to adoption records under the recently-enacted Vermont Adoption Act, Title 15A of Vermont Statutes Annotated. The context of our decision is a request by an adult adoptee to examine and photocopy the file on her relinquishment and adoption held by the private adoption agency that placed her with an adoptive family. Both

the Chittenden Probate Court and the Chittenden Superior Court denied this request, holding the adoptee was entitled only to a summary of the information in the file. We conclude that the probate or superior court can order the relief the adoptee requests if it finds that the balance of statutory factors supports disclosure. We also conclude that the summary provided to the adoptee in this case was insufficient to comply with the applicable statute. We reverse and remand for further proceedings consistent with this opinion.

Plaintiff Daphne Gawne was born on March 25, 1951 in Burlington while her birth mother was a resident at the Elizabeth Lund Home, now the defendant, Lund Family Center. Plaintiff's birth mother ultimately relinquished her to the Elizabeth Lund Home, which then placed her with Blaise and Katherine Kent. The Chittenden Probate Court formalized the Kents' adoption of plaintiff on May 31, 1952.

Plaintiff first began to seek information related to her adoption in the 1980's. Since the deaths of her adoptive mother in 1987 and her adoptive father in 1990, she has attempted to gain information regarding her adoption from both defendant and the probate court. In June 1995, plaintiff visited defendant and requested to inspect or obtain a copy of all files in its possession relating to her or her adoption. Defendant refused this request. Plaintiff filed a petition for disclosure of information with the Chittenden Probate Court in August of 1997 pursuant to the relevant provisions of the Vermont Adoption Act, 15A V.S.A. §§ 6-104(e), 6-112(a). Plaintiff's birth mother consented to disclosure of the information plaintiff requested. Her putative father consented to the disclosure as long as identifying information pertaining to him was deleted. The court denied the petition, although it did order defendant to provide a more detailed summary of the records in its possession. The superior court affirmed the probate court decision by granting summary judgment for defendant.

This is an unusual case. By June 1997, when the probate court released its file to her, plaintiff was aware of virtually all information about her birth family and her adoption. She knew the identity and location of her birth mother and that of the man her birth mother identified as her birth father. She had received extensive information from defendant about her adoption. Defendant drew the line, however, at giving plaintiff complete access to its file on her and her adoption.

It is also an unusual case because the information already disclosed to plaintiff shows serious irregularities in the placement of plaintiff

with her adoptive parents and in the steps to the finalization of the adoption. Because of these irregularities, the Elizabeth Lund Home opposed the adoption when it finally came before the Chittenden Probate Court in 1952. Its main reasons were that: (1) the placement with the adoptive parents was based on friendship with Elizabeth Lund Home staff and not on an objective home study; (2) because of their age and other factors, the adoptive parents were not eligible to adopt babies placed by the home under the existing policies of the home; and (3) the adoptive parents moved to another state shortly after the placement, and that state refused to supervise the placement. After taking evidence, the probate court approved the adoption over the objection of the Elizabeth Lund Home and the Commissioner of the Vermont Department of Social Welfare.

We point out the unusual nature of the dispute to emphasize what is at issue in this appeal. Although plaintiff may want to learn more about herself and her birth parents, her main interest is in knowing how defendant and its employees acted in taking the relinquishment from her birth mother and discharging its obligations as custodian up until the time she was adopted. We are, therefore, not dealing primarily with the privacy interests of birth parents, adoptees or adoptive parents. Instead, we are considering the privacy interests of a private adoption agency.

On appeal, plaintiff makes a number of claims about the merits of the superior court decision and about the procedure the court employed in reaching its decision. We discuss the merits below. Before we reach the merits, we consider one other appeal issue — whether Judge Linda Levitt should have been disqualified from hearing the case — because it goes to the integrity of the adjudicatory process.

## I. Motion to Disqualify

Plaintiff moved to disqualify Judge Linda Levitt on February 15, 1998, about a month after defendant filed a motion for summary judgment in Chittenden Superior Court. Her primary grounds were that Judge Levitt is an adoptive mother who "might hold positions typical of adoptive mothers and cannot easily set aside a potential predisposition against disclosure." Plaintiff also cited that when she appealed to Chittenden Superior Court, defendant failed to appear and plaintiff moved for a default judgment. Rather than acting on the motion, Judge Levitt directed the clerk to notify the attorney for defendant of the pendency of the appeal and to send the attorney a copy of the notice of appeal and statement of questions. Once

defendant appeared in the action through counsel, Judge Levitt denied the motion for a default judgment.

The motion to disqualify was referred to the Administrative Judge for Trial Courts who designated Judge Dean Pineles to rule on it. See V.R.C.P. 40(e)(3) (motions to disqualify are decided by administrative judge or his designee). Judge Pineles denied the motion, ruling that plaintiff's concerns were "speculative in nature" and that plaintiff failed to make a clear and affirmative showing of bias or prejudice. On appeal, plaintiff makes the same arguments she made to the administrative judge.

Plaintiff's motion to disqualify is based on Canon 3E of the Code of Judicial Conduct, which requires a judge to disqualify herself "in a proceeding in which the judge's impartiality might reasonably be questioned." See A.O. 10, Canon 3E(1). Plaintiff argues that because studies show that adoptive parents are often hostile to an adoptee acquiring information about birth parents or the adoption, Judge Levitt should have disqualified herself from this dispute about an adoptee's access to adoption information.

We addressed the standard of review for disqualification decisions in *State v. Putnam*, 164 Vt. 558, 560-61, 675 A.2d 422, 423-24 (1996). We noted that a judge subject to a "disqualification motion is accorded a presumption of honesty and integrity." *Id.* at 561, 675 A.2d at 424. We also held that the administrative judge has discretion in ruling on disqualification motions and will be reversed only if the judge has abused his discretion such that no reasonable basis exists for the decision. See *id.*

Two themes go through plaintiff's motion: (1) that because some adoptive parents are hostile to access to information, the impartiality of an adoptive parent judge might reasonably be questioned; and (2) because Judge Levitt made some erroneous rulings that prejudiced plaintiff, her impartiality can be questioned. Plaintiff's first theme is that we should impose a per se disqualification rule for adoptive parents with respect to adoptee actions for adoption information. We noted in *Putnam* that "per se" rules are generally inappropriate in judicial disqualification cases, unless explicitly recognized by provisions of the Code of Judicial Conduct. See *id.* The Code contains no explicit recognition of the per se rule plaintiff seeks here.

Such a per se rule would be particularly inappropriate in a case like this. Judges may be public officials, but they are also private citizens of all genders, races and religions, and with diverse family circumstances. We do not believe that personal and family circumstances are

appropriate considerations on which to presume bias or partiality. See, e.g., *United States v. Alabama*, 828 F.2d 1532, 1542 (11th Cir. 1987) (decided under identical disqualification language in 28 U.S.C. § 455(a)). Plaintiff offered no evidence that Judge Levitt's status as an adoptive parent made *her* partial. We see no abuse of discretion in the denial of the motion to disqualify because of Judge Levitt's status as an adoptive parent.

██ Plaintiff's second theme is equally unpersuasive. Plaintiff claims Judge Levitt should have been disqualified because of her judicial actions in this case. We held in *State v. Streich*, 163 Vt. 331, 354, 658 A.2d 38, 53 (1995), that "rulings adverse to [a party], even if erroneous, do not by themselves demonstrate that the judge was biased. It is incumbent on [the party seeking disqualification] to make some showing of improper motivation by the rulings . . . ." Plaintiff has made no showing of improper motivation behind the disputed rulings here. Plaintiff's remedy, if any, is to appeal, not to disqualify the judge. We find no abuse of discretion in the administrative judge's decision to deny the motion to disqualify Judge Levitt.

## II. Merits

We now turn to the merits of the case. We are reviewing an award of summary judgment. In doing so, we use the same standard as the superior court and will affirm the summary judgment if "there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Granger v. Town of Woodford*, 167 Vt. 610, 611, 708 A.2d 1345, 1346 (1998) (mem.). Because this case raises no genuine issues as to material fact relating to the petition for disclosure, this case turns entirely on issues of law.

## A. The Vermont Adoption Act

In order to understand the claims in this case and their disposition by the probate and superior courts, it is helpful to first examine the statutory scheme governing adoption and disclosure of adoption-related information in Vermont. In 1996, the Legislature enacted a new, comprehensive Adoption Act, modifying this state's policy on access to adoption records. See 15A V.S.A. §§ 1-101 to 7-105. This is the first time we have been called upon to construe the Act.

The provisions governing the disclosure of adoption records appear in Article 6 of the statute. See *id.* §§ 6-101 to 6-112. Specifically, the article sets out policies governing the confidentiality, retention, and

release of information contained in adoption records. As in the prior law, the basic policy is that adoption records are confidential:

> (a) All records on file with the court or in the possession of an agency, the department of health, the registry or other provider of professional services in connection with an adoption are confidential and may not be inspected except as provided in this title.
>
> . . . .
>
> (d) All records on file with the court or agency shall be retained permanently and sealed for 99 years after the date of the adoptee's birth. Sealed records and indices are not open to inspection by any person except as provided in this title.

15A V.S.A. § 6-102(a), (d). There are, however, major exceptions to this policy when access to records is sought by an adoptee who has attained the age of eighteen years.

The extent of access for adult adoptees depends upon whether the person seeks "nonidentifying information" or "identifying information." "Identifying information" is defined as information that "might establish the current whereabouts of an adoptee, the adoptee's former parent or other family member, including full name, date and place of birth, and last known address." *Id.* § 1-101(10). The term "nonidentifying information" is not defined.

Access is greatest for nonidentifying information. Section 6-104(b) provides:

> Upon request by [an adult adoptee], the court that heard the adoption petition, the agency that placed the adoptee for adoption, or other person who assisted in the adoption shall furnish a detailed summary of any relevant report or information contained in confidential reports in their possession about the adoptee, the adoptee's former parents and the adoptee's genetic history, including the information required by section 2-105 of this title. This report shall exclude identifying information concerning an individual who has not signed a waiver of confidentiality.

Section 2-105(a) requires a parent or agency placing a child for adoption to provide to the prospective adopting parent a social and health history of the child and a social and health history of the child's

parents and extended family. These histories are to contain only nonidentifying information. See *id.* § 2-105(a).

To facilitate decisions on access to identifying information, the Act establishes an adoption registry in the Vermont Department of Social and Rehabilitation Services (SRS). The registry contains an index of the main identifying information: (1) adoptee's name at birth and after adoption, with date of birth; (2) names and addresses of former parents and adoptive parents; (3) date and court in which a consent or relinquishment was filed; (4) date and court in which the adoption petition was filed; (5) any agency involved in the adoption; and (6) the date and nature of the disposition of the petition. See *id.* § 6-103(a)(1). It also contains any consents to the disclosure of identifying information and the information specified in § 2-105, as described above. See *id.* § 6-103(a)(2), (3).

Adult adoptees and others may seek identifying information from the registry. Until December 31, 1997, identifying information about an adoptee's former parent may be disclosed only with consent of that parent. See *id.* § 6-105(b). After December 31, 1997, the disclosure obligation depends upon when the adoption was finalized. For those finalized prior to July 1, 1986, disclosure requires consent. See *id.* § 6-105(b)(1). For later adoptions, disclosure must be made without the former parent's consent unless the parent has filed a request for nondisclosure. See *id.* § 6-105(b)(2). An adoptee who has access to identifying information may obtain a copy of the adoptee's original birth certificate. See *id.* § 6-107(a).

For purposes of this opinion, we refer to §§ 6-104, 6-105 and 6-107 as the disclosure sections of the Vermont Adoption Act because these sections contain the Act's disclosure rights.

The Act contains two authorizations of court actions to obtain disclosure of adoption information. The first authorizes a person "denied access to nonidentifying information to which the individual is entitled" to petition the probate court for relief. *Id.* § 6-104(e); see *id.* § 1-101(6) ("court" means probate court). The second more generally allows a person denied nonidentifying information, or an adoptee denied identifying information or a copy of a birth certificate, to file a petition in the probate court to obtain the information being sought. See *id.* § 6-112(a). In deciding whether to grant the petition, the court must consider a number of factors, including "the reasons the information is sought" and the "expressed needs of the adoptee including the emotional and mental health needs of the adoptee." *Id.* § 6-112(b)(1), (5).

## B. Proceedings Below

Next, we review the history of these proceedings, and the positions of the parties, in relation to the statutory scheme. This proceeding began in August 1997 with a request pursuant to 15A V.S.A. § 6-112 for the Chittenden Probate Court to order defendant to provide plaintiff access to all records in the agency's file of her adoption, after redaction of identifying information with respect to plaintiff's birth father. Plaintiff alleged that she was entitled to access pursuant to § 6-104(b), but was denied access by defendant. She declined to state the purpose of her request, averring that it was impossible to do so without knowing the contents of the records, but stated it was "possible" she was seeking disclosure "for medical purposes; for filing a claim against individuals participating in her adoption for wrongful adoption." At the time of this petition, both of plaintiff's adoptive parents were dead, and plaintiff's birth mother had filed a consent to disclosure. Shortly thereafter, plaintiff's birth father indicated that he did not object to disclosure, provided any identifying information about him was deleted.*

The probate court recognized that defendant was an agency subject to a disclosure obligation under § 6-104, but denied the petition reasoning that § 6-104(b) of the Act gave plaintiff access to only a summary of the information held by an agency. Specifically, the court held: "it does not appear that release of the actual file or copies thereof is mandated pursuant to 15A V.S.A. § 6-104(b) & (c), provided that a detailed summary of the relevant information in the file is compiled and provided to the petitioner." It reviewed defendant's file, however, and went on to hold that the information defendant had provided to plaintiff "is not sufficient in detail to satisfy the requirements of the disclosure statute."

By motion to amend, plaintiff argued that the requirement for a "detailed summary" would be satisfied only by a photocopy of the records with the identifying information redacted. Defendant then filed a summary of its records in compliance with the court order. The court rejected plaintiff's motion and held that the summary filed by defendant complied with its order.

---

*Plaintiff's birth mother has identified the man she claims is plaintiff's father, but he has denied paternity. It appears that the putative father's position is based on preventing public disclosure of the mother's claim that he is plaintiff's father. In any event, neither defendant's position, nor the court decisions in this case, are based on the protection of the privacy interests of the putative father.

Plaintiff then appealed to the superior court, phrasing as the question before the court whether plaintiff should have access to photocopies of defendant's records, modified only by the deletion of identifying information concerning her birth father. Alternatively, plaintiff posed twenty-two questions, including whether the disclosure made by defendant in response to the probate court order complied with the requirements of § 6-104(b). After procedural skirmishing, some of which is discussed above in connection with the motion to disqualify, the superior court granted summary judgment to defendant holding:

> We conclude that the wording of § 6-104(b) is clear and unambiguous, in the context of the whole statutory scheme, and that LFC has fulfilled its obligation under the statute in this case. While we sympathize with Appellant's desire for full disclosure surrounding the circumstances of her adoption, the relief she seeks is not authorized anywhere in the Adoption Act, and providing such an order would run afoul of the very specific mandates of the statute.

It does not appear that the superior court reviewed the file in issue before rendering its decision.

## C. Appeal Issues

On appeal, plaintiff makes three claims with respect to the merits of the superior court decision: (1) § 6-104(b) authorizes the court to order that plaintiff receive a photocopy of all records of defendant with redactions of identifying information with respect to the birth father; (2) the balancing of the factors contained in § 6-112(b) supports such an order in this case; and (3) the superior court failed to discharge its obligation under § 6-112(b) by reviewing "the records of the relevant proceeding for adoption." Defendant answers all of plaintiff's claims with the position that § 6-104(b) authorizes release only of a detailed summary of its records, and defendant has provided that summary, as the probate court found. It argues that because § 6-104(b) does not require greater disclosure, such disclosure is prohibited by § 6-102(a), (d) and would subject defendant, or its employees, to civil penalties and fines under §§ 7-101(c) and 7-102(a).

Each of the three arguments raised by plaintiff requires us to construe provisions of the Vermont Adoption Act. We do so based on familiar principles.

■ In construing statutes, our task is to look first at the statutory language itself to determine whether its meaning is plain; if the language is unclear and ambiguous, legislative history may be used to determine the intent of the Legislature. See *Holmberg v. Brent*, 161 Vt. 153, 155, 636 A.2d 333, 335 (1993). We interpret the statute as a whole, looking to the reason and spirit of the law and its consequences and effects to reach a fair and rational result. See *State v. Ben-Mont Corp.*, 163 Vt. 53, 57, 652 A.2d 1004, 1007 (1994). Our overall purpose is to implement the intent of the Legislature. See *State v. Dixon*, 169 Vt. 15, 17, 725 A.2d 920, 922 (1999).

### D. Court's Power to Order Disclosure of Original Records

We reach a resolution of this case best by starting with plaintiff's second argument — that the balance of factors contained in § 6-112(b) to determine when court relief is appropriate supports the order plaintiff seeks. Defendant has not directly answered this argument because it has assumed that we should not reach the balancing test unless we find a clear right of access to the records in § 6-104(b), and defendant believes there is no right of access. For three reasons, we find this assumption erroneous.

First, we find ambiguous the triggering language for the authorization of court action for the disclosure of information. Section 6-112(a) allows court action by a "person denied disclosure of information under sections 6-104, 6-105(b)(1) or (2), or 6-107 of this title." 15A V.S.A. § 6-112(a). What the language does not explicitly answer is whether the denial must be lawful under the specified sections. Thus, it is unclear whether § 6-112(a) authorizes an enforcement action to protect rights created under the disclosure sections of the Act, or, alternatively, a method for persons properly denied access to records under the disclosure sections to obtain a court order to obtain access, nevertheless.

Second, a close examination of the remainder of § 6-112 shows that the section was intended to allow a court to order access to information where no right to access is provided in the disclosure sections. In subsections (d) and (e), the section specifies how the court is to resolve two special circumstances. In each case, the subsections authorize the court to order access where a provision of a disclosure section would prohibit such access. For example, in instances where access must be based on a filed consent to such access, see *id.* § 6-105(b)(1) (access to identifying information of former parent with respect to adoptions finalized before July 1, 1986 allowed only if former parent has filed a

consent to disclosure), disclosure can be ordered without consent if the court finds that disclosure is in the best interest of the petitioner and is unlikely to cause harm to the person whose identity is sought. See *id.* § 6-112(d). Since these subsections involve examples of how the overall section is to be used, it necessarily follows that § 6-112 generally authorizes the court to order access where the disclosure sections do not provide such access. Cf. *In re Scheiber*, 168 Vt. 534, 535-39, 724 A.2d 475, 476-78 (1998) (construing certain recreational activities as "neither regulated nor contemplated" by zoning ordinance).

This view of the purpose of § 6-112 is reinforced by the balancing factors contained in § 6-112(b). Some of the balancing factors in § 6-112(b) make sense only if they relate to court discretion to order disclosure where there is no absolute right of access. For example, the court must consider as a factor "whether the individual about whom information is sought has filed a request for nondisclosure under section 6-106." 15A V.S.A. § 6-112(b)(2). Section 6-106 provides, however, that by filing a request for nondisclosure, a former parent prevents disclosure of identifying information. See also *id.* § 6-105(b)(2) (identifying information with respect to adoptions finalized on or after July 1, 1986 may be disclosed, despite lack of a former parent's consent, but not if the former parent has filed a request for nondisclosure). If § 6-112(b) allows court enforcement of access rights only if they are granted under other sections of the Act, the court would never consider the presence of a nondisclosure request as a balancing factor because the presence of a nondisclosure request negates any access right.

Finally, we note that if § 6-112 provides only for the enforcement of access rights granted in the disclosure sections, it duplicates the function of § 6-104(e), which authorizes court actions to enforce the right of access to nonidentifying information. We avoid a statutory construction that would render part of the statutory language superfluous. See *Trombley v. Bellows Falls Union High School*, 160 Vt. 101, 104, 624 A.2d 857, 860 (1993).

The third reason is the most important. Although there are numerous amendments made by the Legislature, the template for the Vermont Adoption Act is the Uniform Adoption Act, approved by the National Conference of Commissioners on Uniform State Laws in 1994. See 9 U.L.A. 1 (Supp. Pamphlet 1998). When our statute is taken from a model or uniform act, it is often helpful to examine the intent behind the model. See *State v. Papazoni*, 159 Vt. 578, 581, 622

A.2d 501, 503 (1993). Here, an examination of the uniform act gives us helpful insight in construing our statute.

Like the Vermont Adoption Act, the Uniform Adoption Act contains two provisions on court actions to gain disclosure of identifying or nonidentifying information. The first, contained in § 6-103(c) of the Uniform Act, is virtually identical to that in § 6-104(e) of the Vermont Adoption Act and enforces an individual's right to access to nonidentifying information. See 9 U.L.A. 83 (Supp. Pamphlet 1998). The second, contained in § 6-105 of the Uniform Act, is similar to that created in § 6-112 of the Vermont Act but explicitly applies only when the information sought is not available under the disclosure sections of the Act. See *id.* at 84-85 (§ 6-105(a) specifies that the section applies "[t]o obtain information not otherwise available under" the disclosure sections of the Uniform Act). It contains a virtually identical list of factors for the court to use in determining whether to order disclosure. See Uniform Adoption Act § 6-105(b), at 85.

We have noted before that the combination of model act provisions and those locally drafted often does not produce a seamless web. See *State v. Quinn*, 165 Vt. 136, 139, 675 A.2d 1336, 1338 (1996); *Martel v. Stafford*, 157 Vt. 604, 609, 603 A.2d 345, 348 (1991). We are reluctant to conclude, however, that when the Legislature uses model language it does so for a purpose different from the purpose in the model act. See *Quinn*, 165 Vt. at 139, 675 A.2d at 1338; *Martel*, 157 Vt. at 609, 603 A.2d at 348. In the Uniform Adoption Law, the purpose of the list of factors is to inform the court's discretion where there is no clear statutory right of access. We conclude that the purpose is the same in § 6-112 of the Vermont Adoption Act.

■ Based on our construction of § 6-112, we conclude that the superior and probate courts could have ordered the relief plaintiff sought, even if it is not authorized by § 6-104(b), if the court found that the balance of the factors contained in § 6-112(b) tips in favor of disclosure. The superior court's grant of summary judgment to defendant, without considering those factors, was error.

Although we recognize that plaintiff has argued that the balance of the factors contained in § 6-112(b) tips heavily in favor of disclosure, we do not believe it is appropriate for us to determine whether to grant relief in the first instance. Section 6-112(b) requires the court to "make specific findings" on the statutory factors, which it can do only if it has taken evidence or the relevant facts are undisputed. In this case, the court did not take evidence or make findings because it

granted the motion for summary judgment. We must remand for evidence and findings.

Although we do not decide whether plaintiff should be granted the relief she requests, we make one additional comment on the statutory scheme because it may be helpful in resolving plaintiff's petition. As we indicated in the outset, this is a dispute about defendant's actions in facilitating plaintiff's adoption, and defendant is seeking to protect its own privacy interests, rather than those of birth or adoptive parents or their families. As we explain in more detail *infra*, we can discern no legislative intent to use the privacy protection provisions of the Act to protect the privacy interests of an adoption agency. Thus, we do not believe that references to "the individual" in the factors contained in § 6-112(b) include the adoption agency or its employees.

## E. Nature of Detailed Summary of Records

■ Because our resolution of the second issue requires further proceedings that may or may not resolve the case, we examine the other issues raised by plaintiff. Plaintiff argues first that she has a right of access to a photocopy of defendant's records under § 6-104(b), which requires an agency to furnish to an adult adoptee "a detailed summary of any relevant report or information contained in confidential reports in their possession about the adoptee." 15A V.S.A. § 6-104(b). The superior court found that the plain meaning of the term "detailed summary" does not include photocopies of original records. We agree with this conclusion. See Random House Unabridged Dictionary 1904 (2d ed. 1993) (summary is an "abstract, recapitulation or compendium" of information). As the probate court held, "[u]nder any definition provided or reasonably imagined, a summary is something other than the original document itself."

This conclusion does not, however, end our inquiry. Plaintiff claims that the summary provided her by defendant is insufficient to qualify as a detailed summary. We agree with this claim.

Although plaintiff made this claim in her statement of questions, it does not appear that the superior court made an in camera inspection of defendant's file to determine whether the summary provided by defendant during the probate proceeding met the requirements of § 6-104(b). We have obtained the file from the probate court and made that inspection.

As might be expected by the nature of this controversy, the summary provided by defendant is least detailed in its description of the actions and thought processes of the Elizabeth Lund Home and

its employees. The file contains information, omitted from the summary, about the process of relinquishment of plaintiff to the Home. It contains more information than the summary about how the placement was made with plaintiff's adoptive parents and about the actions of Elizabeth Lund Home staff with respect to adoption authorities in Pennsylvania, the state to which plaintiff was taken immediately after the placement, and with respect to the probate court at the time the adoption decision was made. Because of these omissions, we conclude that the summary does not comply with § 6-104(b).

■ In reaching this conclusion, we make two points about the nature of the disclosure obligation in § 6-104(b). The language requiring access to a "detailed summary" rather than the original records comes from the Uniform Adoption Act. The policy behind the requirement appears to be to allow release of nonidentifying information, without providing identifying information. We do not read the requirement as allowing the holder of the information to omit information important to the person making the request as long as the information can be provided without identifying information. This policy is necessarily inherent in the terminology chosen. Thus, a summary can be brief, but it must be comprehensive, even more so if it is to be a "detailed summary." See Random House Unabridged Dictionary at 1904 (summary is "comprehensive"). Although § 6-104 does not authorize access to the records in their original form, it also does not authorize the custodian to censor the nonidentifying information provided.

■ Second, we do not believe an adoption agency can use the requirement to provide only summaries to omit information, the disclosure of which might be detrimental to the agency. The Vermont Adoption Act of 1996 was the culmination of a five year project on the part of the Vermont Legislature. See 1989, No. 213 (Adj. Sess.) (an act forming the Adoption Reform Task Force to study issues surrounding adoption); 1993, No. 214 (Adj. Sess.) (an act making some modifications in disclosure statutes and establishing a legislative study committee to examine adoption issues generally); 1995, No. 161 (Adj. Sess.) (act adopting the Vermont Adoption Act as a new title 15A of V.S.A.). The Adoption Act was first written by the Adoption Reform Task Force and then rewritten by the Vermont Legislature, working from a 1992 draft of the Uniform Adoption Act, and as such became the first state to adopt the Uniform Adoption Act. See 9 U.L.A. 1 (Supp. Pamphlet 1998) (as of 1998, Vermont is the only state to adopt

the Uniform Act). The drafters of the Uniform Act intended Article 6 to create a more open system of adoption files while balancing the interests of the birth parents, the adoptive parents and the adoptee, collectively referred to as the "adoption triad." See Uniform Adoption Act, Comment to Article 6 in 9 U.L.A. 81 (Supp. Pamphlet 1998) (goal of article is to encourage the collection and release of nonidentifying information to adoptive parents and to adoptees at age eighteen on request).

We have made an extensive review of the legislative history of Vermont's Adoption Act of 1996, including the many committee meetings and hearings in both the Vermont House and Senate, and from the record it is clear that the Legislature shared the Uniform Act drafter's objective of creating a balance that would remove the culture of secrecy from adoptions, while giving integrity to the interests of the adoption triad. We find nothing in the legislative history to suggest that the Legislature was concerned about protecting private information of an adoption agency or that it would elevate the interests of an agency above those of a member of the triad. Accordingly, we do not believe an agency has any legitimate interest in withholding information about its activities in preparing a detailed summary of nonidentifying information under § 6-104(b).

## F. Conclusion

In conclusion, we hold that the probate court, and on appeal the superior court, had the authority under § 6-112(a) of the Vermont Adoption Act to order the relief plaintiff requested if the court finds that the balance of factors under § 6-112(b) supports that relief. If the superior court decides not to order the requested relief under § 6-112(a), defendant must create a further detailed summary of the information in its files to comply with § 6-104(b), as interpreted in this opinion. Because of our disposition of the merits, we do not reach plaintiff's claims of error in the procedures employed by the superior court.

*The decision not to disqualify Judge Linda Levitt is affirmed. The superior court decision on plaintiff's appeal from the Chittenden Probate Court is reversed and remanded for proceedings not inconsistent with this opinion.*