STATE OF VERMONT

| SUPERIOR COURT | ENVIRONMENTAL DIVISION |
| --- | --- |
| | Docket No. 136-12-18 Vtec |
| Bart Industries, Inc. Zoning Permit | DECISION ON MOTION |

The present appeal is of a site plan approval decision issued by the Town of Rockingham Development Review Board (DRB) to B-A-R-T Industries, Inc., (BART) for the construction of two 30,000-gallon above-ground propane tanks, as well as an associated turnaround loop, parking for three fuel delivery trucks, lighting, fencing, and an area for stormwater treatment. Neighboring property owner Carol Young appealed that decision to this Court. Presently before the Court is BART's motion for summary judgment.

BART is represented in this matter by Stephen C.H. Cassarino, Esq. Ms. Young is represented by James A. Valente, Esq.

## Legal Standard

Pursuant to V.R.C.P. 56(a), we will grant summary judgment to a party "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a), applicable here through V.R.E.C.P. 5(a)(2). Once the moving party meets the initial burden of showing that no material facts are disputed, the burden shifts to the non-moving party to establish a triable issue of fact. Pierce v. Riggs, 149 Vt. 136, 138 (1987). To establish that a fact is disputed or unsupported by the record, the non-moving party must cite to materials in the record to show that the materials cited by the moving party do not establish the absence of a genuine dispute. V.R.C.P. 56(c). When considering a motion for summary judgment, we give the nonmoving party the benefit of all reasonable doubts and inferences. Robertson v. Mylan Labs., Inc., 2004 VT 15, ¶ 15, 176 Vt. 356.

## Factual Background

We recite the following facts solely for the purpose of deciding the pending motion for summary judgment.

1.      BART owns Lot 19 of the Rockingham Transport Park in Rockingham, Vermont (the Property).  The Property was created by subdivision by a Town of Rockingham Planning Commission decision dated September 27, 1989.

2.      The Property is approximately 0.9 acres.  There is an existing underground storage tank on the Property.  It is otherwise undeveloped.

3.      The Property is located in the Commercial Industrial-2 Zoning District (CI-2 District) as defined by the Rockingham Zoning Bylaws (Bylaws).

4.      "Trucking terminal" is a permitted use in the CI-2 District.  Bylaws § 2416.  The term is not defined.

5.      Ms. Young owns property that is adjacent to the Property located on Country Club Road in Rockingham, Vermont.  Her property is located in the Recreation Conservation District (RC District).

6.      On September 28, 2018, BART submitted Application # 4381-18 to the DRB for site plan approval.

7.      The application proposes the installation of two 30,000-gallon above-ground propane tanks.  The tanks proposed will be 11 feet by 68 feet with a crushed stone base and concrete footings for foundation.  In addition, the application proposes a turnaround loop for deliveries, parking for three fuel delivery trucks, lighting, fencing, and an area for stormwater treatment (the Project).

8.      BART's application estimates 1 to 2 tanker truck trips to the Property per week, and 3 to 4 delivery trucks per day.

9.      The DRB held a public hearing on October 10, 2018.  On November 29, 2018, the DRB issued its decision approving the Project.  The decision classified the Project as a "fueling facility."

10.     Ms. Young timely appealed that decision to this Court on December 17, 2018.

<strong><u>Discussion</u></strong>

Ms. Young's Statement of Questions contains seven Questions.  As part of her response to the pending motion, she withdraws some of the issues raised in some of these Questions, which we interpret as a withdrawal of the Questions themselves.  Ms. Young withdraws Question 1, which addresses alleged procedural deficiencies before the DRB, Questions 5 and 6, which

addresses lot coverage, and Question 7, which addresses the Project's compliance with the National Fire Protection Association Code.

Therefore, only Questions 2, 3, and 4 remain before the Court.[1] Questions 2 and 3 raise the issue of whether the proposed use is a permitted or conditional use in the CI-2 District.[2] Question 4 asks whether the Property complies with the minimum lot size for the District. We address each issue in turn.

## I. Whether the Project is a permitted use within the CI-2 District.

BART asserts that the Project is properly categorized as a "trucking terminal," or, in the alternative, fits within the category of "other commercial & industrial uses." A trucking terminal is a permitted use in the CI-2 District, whereas "other commercial & industrial uses" are conditional uses. Bylaws § 2416. Neither term is defined within the Bylaws.

Ms. Young argues that the Project is not a trucking terminal and, in the alternative, that the "other commercial & industrial uses" category is standardless and unenforceable.[3] Therefore, she asserts that the Project is not a permitted or a conditional use and, as such, should not be granted site plan approval.

---

[1] Ms. Young's Questions are all written as if the present action were on-the-record, beginning with "Did the DRB err . . . ." This, however, is a de novo appeal. 10 V.S.A. § 8504(h); V.R.E.C.P. 5(g). This means we consider the application on appeal "as though no [municipal] action whatever had been held prior []hereto." Chioffi v. Winooski Zoning Bd., 151 Vt. 9, 11 (1989) (citation and internal quotation marks omitted). As such, we interpret Ms. Young's Questions to ask whether the Project complies with the relevant requirements.

[2] Question 3 asks: "Did the DRB err by classifying such bulk storage as the permitted use of 'fuel facility,' when that is not listed as a permitted use, in an apparent attempt to broaden the actual permitted use: 'gasoline stations'?" On appeal, neither party is arguing that the proposed use is a fuel facility or gasoline station. Instead, both parties' arguments are based on an interpretation of the term "trucking terminal." Further, we note that the DRB's classification of the Project does not have bearing on our de novo review of the application where it applied the proper review standards. Therefore, we interpret the Question similarly to Question 2.

[3] Ms. Young notes that neither BART nor the DRB described the Project as a trucking terminal below. She does not, however, allege that BART is presently barred from raising the categorization here.

We are directed to respect the limitations of what was applied for and noticed by the municipal panel below. See In re Torres, 154 Vt. 233, 236 (1993). However, "whatever [an appropriate municipal panel] might have done with an application properly before it, the superior court may also do if an appeal is duly perfected." Id. (citing In re Poole, 136 Vt. 242, 247 (1978)).

Below, the DRB considered the application as one for site plan approval for a permitted use, which it subsequently defined as a fuel facility. Here, the Court is considering the same application for site plan approval, with the use presently defined as a trucking terminal. It appears uncontested that the DRB could have considered the application as one for a trucking terminal. Further, the main issue on appeal is whether the Project is a permitted use. The DRB considered and decided this below. Therefore, there is no issue resulting from the change in the Project's categorization before this Court.

In interpreting zoning ordinances, we apply familiar rules of statutory construction. In re Appeal of Trahan, 2008 VT 90, ¶ 19, 184 Vt. 262. First, we "construe words according to their plain and ordinary meaning, giving effect to the whole and every part of the ordinance." Id. (citations omitted). If there is no plain meaning, we will "attempt to discern the intent from other sources without being limited by an isolated sentence." In re Stowe Club Highlands, 164 Vt. 272, 280 (1995). In construing ordinance language, our "paramount goal" is to implement the intent of its drafters. Colwell v. Allstate Ins. Co., 2003 VT 5, ¶ 7, 175 Vt. 61. We therefore "adopt a construction that implements the ordinance's legislative purpose and, in any event, will apply common sense." In re Laberge Moto-Cross Track, 2011 VT 1, ¶ 8, 189 Vt. 578 (quotations omitted); see also In re Bjerke Zoning Permit Denial, 2014 VT 13, ¶ 22, 195 Vt. 586 (quoting Lubinsky v. Fair Haven Zoning Bd., 148 Vt. 47, 49 (1986)).

If we cannot identify the plain meaning because the language is unclear or ambiguous, or if applying the ordinary meaning makes the ordinance ineffective or leads to irrational results, we consult other sources to help ascertain the legislative intent. See In re Susan P., 169 Vt. 252, 262 (1999); Delta Psi Fraternity v. City of Burlington, 2008 VT 129, ¶ 7, 185 Vt. 129; Town of Killington v. State, 172 Vt. 182, 188 (2001). Such sources include the legislative history of the law; its subject matter, effects, and purpose; and its context within the language of the larger statute or bylaw. See Susan P., 169 Vt. at 262; Delta Psi, 2008 VT 129, ¶ 7; Town of Killington, 172 Vt. at 189. We may also look to sources outside the ordinance that have bearing on its meaning. In re Confluence Behavioral Health, LLC, 2017 VT 112, ¶ 25, 206 Vt. 302 (citations omitted). Finally, because zoning ordinances limit common law property rights, we resolve any uncertainty in favor of the property owner. Bjerke, 2014 VT 13, ¶ 22.

We begin our analysis with an interpretation of the term "truck terminal."[4] Truck terminal is not defined by the Bylaws. "Terminal" is defined, in relevant part, as "1a: either end of a carrier line having facilities for the handling of freight and passengers[;] b: a freight or passenger station that is central to a considerable area or serves as a junction at any point with other lines." *Terminal*, Merriam-Webster (https://www.merriam-webster.com/dictionary/terminal).

---

[4] We note that the "truck" aspect of the term does not appear to be in dispute, in that the parties agree that trucks will be using the Property.

4

"Freight" is defined as "[g]oods transported by water, land, or air; CARGO." *Freight*, Black's Law Dictionary (11th Ed. 2019). A "station" is "[a] place where both freight and passengers are received for transport or delivered after transport." *Station*, Black's Law Dictionary (11th Ed.).

BART asserts that the Project is a destination where transport tanker trucks deliver their freight, here propane. Therefore, BART asserts, the Project is the end of a carrier line with facilities for freight, meeting the definition of a terminal. It also asserts that the Project is a propane station that is central to a considerable area, in that delivery trucks use the station to service surrounding customers. Ms. Young disagrees, arguing that the Project does not house freight, and is not at the end of any transport line.[5] She asserts without support that the tanks do not resemble structures that are commonly known as terminals. She asserts that terminals are commonly understood to be large warehouses or fenced areas located at the end of a rail, truck, or shipping route where large amounts of cargo are offloaded and organized.

First, based on the plain meaning of the word "freight," we conclude that propane in this context is freight. It is a good, here being transported by land. Further, it appears uncontested that the Project proposes to serve as a location where propane is delivered by tanker trucks and then further transported and delivered to customers by delivery trucks. Therefore, we conclude that by the plain meaning, the Project is a freight station.

Finally, it is uncontested that the Project seeks to distribute propane to customers in the area from these tanks through delivery trucks. We therefore conclude that the Project meets the definition of a terminal because it is a freight station that is central to a considerable area and serves as a junction point with other lines.

We further note that this conclusion appears to be in line with the purpose of the CI-2 District. Colwell, 2003 VT 5, ¶ 5 (noting that implementing the intent of the drafters is our

---

[5] Ms. Young also argues that the Project is not a "structure." The word "structure" appears in none of the above cited definitions. Instead, the word appears in an Indiana case cited by Ms. Young and two definitions of "trucking terminal" cited by BART. When interpreting a zoning ordinance, we first construe words according to their plain meaning, keeping in mind our goal of implementing the intent of the ordinance's drafters. See Trahan, 2008 VT 90, ¶ 19; Colwell, 2003 VT 5, ¶ 5. The Court will only consult outside sources if the language is unclear, ambiguous, or if applying the ordinary meaning would be ineffective or irrational. See Susan P., 169 Vt. at 262; Delta Psi, 2008 VT 129, ¶ 7; Town of Killington, 172 Vt. at 189.

Because "structure" is not included in the plain meaning of the term, we decline to read it in. We further note, however, that Ms. Young's opposition to the present motion does not include a plain meaning analysis of the word "terminal" and instead relies upon outside interpretations of the term "trucking terminal."

"paramount goal."). CI-2 Districts are areas adjacent to major highways and range "from areas with more industrial and mixed commercial uses to areas with concentrations of transportation related functions." Bylaws § 2416. The Bylaws state that these Districts "are critical for some uses which do not fit into the traditional downtown[,] with its storefronts and off-street parking." Id. From this, we can discern that the intent of the Bylaws' drafters was to create a district that generally supported non-residential uses and distribution-related activities. This corroborates our conclusion that the Project complies with the plain meaning of the term "truck terminal" and fits the purpose of the District. Further, to the extent there is any ambiguity latent in the term, we resolve that ambiguity in favor of BART. See Bjerke, 2014 VT 13, ¶ 22.[6]

We therefore conclude that the Project is properly classified as a truck terminal. It is therefore a permitted use within the CI-2 District. Having reached this conclusion we need not address whether the Project could be placed in the category of "other commercial & industrial uses," or that term's enforceability.

## II. Whether the Project complies with the minimum lot size requirement in the CI-2 District.

The only remaining issue before the Court is whether the Project complies with the minimum lot size requirement.

Pursuant to 24 V.S.A. § 4412(2):

Any lot that is legally subdivided . . . and is in existence on the date of enactment of any bylaw . . . may be developed for the purposes permitted in the district in which it is located, even though the small lot no longer conforms to minimum lot size requirements of the new bylaw or interim bylaw.

It is uncontested that the Property was legally subdivided in 1989 and is now undersized for development in the CI-2 District. Based on the above conclusion that the development proposed is a permitted use in the CI-2 District, however, we further conclude that, pursuant to § 4412(2), the lot is exempt from compliance in this respect and does not need to conform to the minimum lot size requirement.

---

[6] Because we reach this conclusion on the plain meaning of the term, we do not need to analyze other municipalities' or jurisdictions' interpretation of truck terminal.

## Conclusion

For the foregoing reasons, we conclude that the Project is a permitted use in the CI-2 District because it qualifies as a truck terminal. We further conclude that because BART proposes a permitted use in the CI-2 District, under 24 V.S.A. § 4412(2) the Project does not need to comply with the 1-acre minimum lot size requirement for development in the District.

Given these conclusions and the fact that Ms. Young has withdrawn the other issues raised in her Statement of Questions, we **GRANT** BART's motion for summary judgment and **UPHOLD** the DRB's issuance of the site plan approval.

This concludes the matter before the Court. A Judgment Order accompanies this Decision.

Electronically signed on August 08, 2019 at 09:45 AM pursuant to V.R.E.F. 7(d).

_____

Thomas G. Walsh, Judge
Superior Court, Environmental Division