## Scott Martel v. George F. Stafford, Administrator of the Estate of Wilhelmina S. Parker and Ronald J. Gould

[603 A.2d 345]

No. 90-126

Present: **Gibson, Dooley, Morse and Johnson, JJ., and Mandeville, D.J.,** Specially Assigned

Opinion Filed November 8, 1991

Motion for Reargument Denied December 18, 1991

*Patricia S. Orr* and *Robert E. Manchester* of *Manchester Law Offices, P.C.*, Burlington, for Plaintiff-Appellant.

*Barbara E. Cory* of *Dinse, Erdmann & Clapp*, Burlington, for Defendant-Appellee.

**Dooley, J.** On April 18, 1985, plaintiff, Scott Martel, was a passenger in a car being driven by Ronald Gould when it collided with a car driven by Wilhelmina Parker. Ms. Parker died from injuries incurred in the accident. Alleging that he had in-

curred injuries as a result of the drivers' negligence, plaintiff sued Gould and defendant George Stafford, executor of Parker's estate, on April 18, 1988. The Rutland Superior Court dismissed the action as filed beyond the limitation period imposed by 12 V.S.A. § 557(a), and this appeal followed.[1] We affirm.

It is undisputed that if the limitation period in 12 V.S.A. § 557(a) controls, this action is barred. That statute provides that if a person, against whom an action may be brought, dies before the expiration of the time within which the action may be commenced, the normal limitation period ceases to operate as of the date of death. Then:

> [a]fter the issuance of letters testamentary . . . such action, if the cause of action survives, may be commenced . . . against the executor or administrator within two years, and not after.

Wilhelmina Parker died two days after the accident, and the normal limitation period for tort actions ceased to operate on that date. Letters of Administration were issued to defendant Stafford by the Orphans' Court in Montgomery County, Maryland, on May 21, 1985.[2] The two-year period set by § 557(a) expired in May of 1987. This action was commenced some eleven months after that period expired.[3]

Plaintiff argues, however, that the limitation period has not expired for two reasons: (a) the limitation period contained in 12 V.S.A. § 557(a) is tolled by virtue of 14 V.S.A. § 1202; (b) 12 V.S.A. § 557(a) denies plaintiff due process of law unless actual notice is given to plaintiff of the issuance of letters testamentary to defendant Stafford. We take these claims in order.

---

[1] Pursuant to V.R.C.P. 54(b) judgment was entered in favor of defendant Stafford. The action remains alive with respect to Ronald Gould.

[2] Ancillary administration was allowed in this state, and defendant was appointed executor in Vermont on August 19, 1985. It is, however, the date he was appointed in Maryland which controls. See *Estate of Harris v. Eichel*, 152 Vt. 180, 182, 565 A.2d 1281, 1282 (1988).

[3] Although it is not determinative, plaintiff has alleged that he was a minor at the time of the accident and did not reach his eighteenth birthday until November 28, 1987. Based on this fact he argued that the applicable statute of limitations was tolled until that date pursuant to 12 V.S.A. § 552. If we accept that argument, the complaint was untimely by only four and one-half months.

The statute on which plaintiff relies provides in part:

> The running of any statute of limitations measured from some event other than death and advertisement for claims against a decedent is suspended during the four months following the first publication of notice under section 1201 of this title but resumes thereafter as to claims not barred pursuant to the sections which follow.

14 V.S.A. § 1202. Plaintiff argues that § 1202 applies since 12 V.S.A. § 557(a) is a statute of limitations and it is measured from an event other than death or the advertisement of claims. As a result, plaintiff argues, the running of the two-year period set forth in 12 V.S.A. § 557(a) was tolled from the opening of the estate until four months after notice to creditors was given under § 1201. Since no notice was given, as detailed below, plaintiff argues that § 1202 continues to toll the statute of limitations period to this day.

Section 1202 is part of a group of statutes governing the presentation of claims to the executor of an estate and is ancillary to a statute commonly referred to as a "nonclaim statute." The nonclaim statute set forth in 14 V.S.A. § 1203 bars certain claims that are not formally presented to the estate within a specified time. The process begins with a notice to creditors under Rule 64(a) of the Vermont Rules of Probate Procedure. That notice includes notice by publication and notice by first class mail "to any creditor known to or reasonably ascertainable by the executor." *Id.* However, the probate court can excuse the executor from giving notice because, among other reasons, "there are no debts existing against the decedent." 14 V.S.A. § 1201(a)(1). Defendant certified on August 27, 1985 that no debts existed against the decedent, and the Rutland Probate Court on August 30, 1985 ordered that defendant was excused from publishing a notice to creditors.[4]

The core of plaintiff's argument is that defendant improperly certified that no debts existed when he knew or should have known of plaintiff's negligence claim. If we accept this premise, then defendant should have given notice to plaintiff within thirty days of being issued letters testamentary, presumably by

---

[4] We have no record of what occurred with respect to creditors in Maryland, the state of primary administration.

first class mail. See V.R.P.P. 64(a). Plaintiff asserts that the only possible remedy for this violation of defendant's duty is to toll the limitation period until notice is given.

A weakness in plaintiff's argument arises from treatment of tort claims under Vermont's nonclaim statute. The central statutory provision is 14 V.S.A. § 1203(a), which provides that most claims against a decedent's estate which arose before the death of the decedent are barred unless presented to the executor within four months following the first notice to creditors, or presented within three years if no notice to creditors has been published. However, the statute does not apply to "claims for injury to the person and damage to property suffered by the act or default of the deceased." *Id.* The negligence claim that plaintiff asserts against defendant fits within this exclusion. Thus, defendant argues that in view of the exclusion, the tolling period set forth in § 1202 does not apply at all.

■ The parties' arguments hinge on several elements of a complicated statutory scheme. As we must consider all of the statutes together, *State v. International Collection Service, Inc.*, 156 Vt. 540, 542, 594 A.2d 426, 428 (1991), and implement the intent of the Legislature as best it can be determined, *In re Walker*, 156 Vt. 639, 639, 588 A.2d 1058, 1059 (1991), we will evaluate the arguments in light of the overall statutory scheme. The superstructure of these statutes is taken from Part 8 of Article III of the Uniform Probate Code (UPC). See 8 U.L.A. §§ 3-801–3-803. However, Vermont adopted the UPC provisions only with some significant amendments. While the UPC's nonclaim statute applies to all claims, including tort claims, see UPC §§ 1-201 (definition of claims), 3-803(a) (nonclaim statute), Vermont's version excludes certain tort claims as well as claims for possession of or title to real estate. 14 V.S.A. § 1203(a). The UPC four-month tolling period begins at death, UPC § 3-802, while Vermont's otherwise identical version commences on proper notice to creditors. 14 V.S.A. § 1202.

Despite the differences between the Vermont and UPC versions, it is helpful to examine the intent of the UPC drafters. Cf. *State v. D'Amico*, 136 Vt. 153, 156, 385 A.2d 1082, 1084 (1978). Under the Code, "four months is added to the normal period of limitations by reason of a debtor's death before a debt is barred." Comment to Uniform Probate Code § 3-802. The sec-

tion also mandates that the claimant look to the applicable statute of limitations as well as the nonclaim provisions in § 3-803. *Id.* The clear purpose is to give the claimant an opportunity to seek satisfaction from the estate's personal representative before bringing suit. The breadth of the UPC claims limitation statute explains the breadth of the Code's tolling provision. Since all claims must be presented, the UPC tolls all statutes of limitation for a four-month period to allow claims to be presented to and resolved by the personal representative. The Vermont exceptions to the claims required to be presented to the executor render a blanket tolling provision unnecessary although the draftsmen of 14 V.S.A. § 1202 failed to constrict the version they adopted in § 1203(a).

That omission is particularly apparent when we examine the notice-to-creditors provisions of § 1201 and V.R.P.P. 64. The rule provides that the notice state that creditors must "present their claims within four months after the date of first publication of the notice or be forever barred from their claims." V.R.P.P. 64(a). Official Form 32 implements this provision by informing the creditor that a claim must be presented within four months or it "will be forever barred." The notice is clearly wrong with respect to one whose claim is excluded from the operation of 14 V.S.A. § 1203(a).

■ Unfortunately, the statutes in this area are hardly a "seamless web."[5] Defendant urges that we reconcile them by holding that a tort claimant is not a creditor for purposes of 14 V.S.A. §§ 1201, 1202. This approach is tempting because it responds directly to the statutory inconsistencies. The terminology comes from the UPC, however, and is clearly intended to cover tort claimants. The UPC equates the term "creditor" with one who holds a claim against the estate, and the term "claim" is specifically defined to include tort claims. See UPC § 1-201(4) (claims include liabilities arising in tort); General

---

[5] To further complicate the situation, Vermont has an old nonclaim statute in 12 V.S.A. § 557(a). See *Briggs v. Estate of Thomas*, 32 Vt. 176, 178 (1859). That statute has not been repealed although it is archaic because it depends upon the appointment of commissioners, a procedure no longer used. Plaintiff attempted to have the probate court appoint commissioners in this case, but the request was denied.

Comment to UPC Article III, Part 8 (purpose of the part is to achieve uniformity in the law "regarding creditors' claims"); 14 V.S.A. § 1203(a) (section covers all claims against an estate including tort claims); *Corlett v. Smith*, 106 N.M. 207, 210, 740 P.2d 1191, 1194 (Ct. App. 1987) (under New Mexico version of UPC, claim includes tort claim).[6] We hold that plaintiff is a claimant or creditor for purposes of 14 V.S.A. §§ 1201 and 1202.

■ On the plain meaning of § 1202, the result on these facts is the same. Plaintiff argues that the section tolls the statute of limitations until four months after the notice is given to creditors, an event that has not yet occurred. The language of § 1202, however, adds four months to the applicable statute of limitations *only* where notice is given to creditors under 14 V.S.A. § 1201. In this case, there was no notice to creditors, and the tolling provision did not apply.[7] We are unwilling to find that the statute of limitation is tolled based on a theory that defendant should have provided notice. The tolling provision's purpose is to allow the claimant an opportunity to present the claim to the executor so that it can be paid, or otherwise resolved, without litigation. Where the probate court excuses the executor from giving notice, there is no claims payment process and no reason to allow a claimant an added four months to bring suit.

Plaintiff here did not require notice for the purpose of presenting a claim to the executor. As discussed above, no need for a claim against the executor existed. Plaintiff was dealing extensively with decedent's insurance carrier and its counsel. The correspondence indicates that plaintiff knew that Parker had died and that her estate had been opened. If notice was to have meaning in this case, it was to alert plaintiff's counsel to the proper limitation period under 12 V.S.A. § 557(a). This is not the purpose of 14 V.S.A. § 1201 notice. It makes no sense to toll the

---

[6] At least one state, Minnesota, has amended its version of the UPC to exclude tort claims from the general definition of claims. See *In re Estate of Henry*, 426 N.W.2d 451, 455 (Minn. Ct. App. 1988).

[7] In reaching this conclusion, we expressly do not decide whether the applicable statute of limitations would be tolled for four months if the executor gave the plaintiff notice under V.R.P.P. 64(a). We also do not decide whether, if 14 V.S.A. § 1202 did apply, the running of the limitation period in 12 V.S.A. § 557(a) could be tolled for more than four months because defendant failed to give notice.

limitation period for failure to give notice because that notice might have achieved an unintended purpose.

Plaintiff's theory is not aided by his argument that such notice was constitutionally required as a matter of due process of law. Even if we agreed that tolling the statute of limitations could be a proper remedy for a due process violation, there is no wrong here in a constitutional sense. Since the nonclaim statute did not apply to plaintiff's claim, there can be no constitutional right to notice of its limitation. No property interest was lost because of the failure to give notice.

Plaintiff's second argument is that 12 V.S.A. § 557(a) denies him due process of law by failing to provide for actual notice to tort claimants of the issuance of letters testamentary or of the estate's administration, the act that triggers the two-year limitation period.[8] This argument rests on the Supreme Court's holding in *Tulsa Professional Collection Services v. Pope*, 485 U.S. 478 (1988).

In *Pope*, the Supreme Court found that Oklahoma's two-month nonclaim statute denied due process to known or reasonably ascertainable contract creditors of the estate in the absence of actual notice of the commencement of the probate proceedings. *Id.* at 491. In reaching this conclusion, the Court first concluded that the nonclaim statute represented state action. It differentiated a "self-executing" statute of limitations:

> The State's interest in a self-executing statute of limitations is in providing repose for potential defendants and in avoiding stale claims. The State has no role to play beyond enactment of the limitations period. While this enactment obviously is state action, the State's limited involvement in the running of the time period generally falls short of constituting the type of state action required to implicate the protections of the Due Process Clause.

---

[8] Although the record is clear that no personal notice was given in Vermont, it does not show what occurred in Maryland, the state of primary administration. Maryland law now requires personal notice to creditors, although the requirement was added after the *Pope* decision. See Md. Ann. Code, Estates & Trusts §§ 7-103, 7-103.1. We assume that at the time the estates were opened in this case, there was no relevant difference between the Vermont and Maryland probate procedures.

> Here, in contrast, there is significant state action. The probate court is intimately involved throughout, and without that involvement the time bar is never activated.

*Id.* at 486–87. In summation, the Court stated that "[w]here the legal proceedings themselves trigger the time bar, even if those proceedings do not necessarily resolve the claim on its merits, the time bar lacks the self-executing feature . . . necessary to remove any due process problem." *Id.* at 487.

The Court went on to find that the nonclaim statute adversely affected a protected property interest because it extinguished the creditor's claim against the estate. *Id.* at 488. The Court then looked at the "practicalities of the situation," including the state's interest in expeditious resolution of probate proceedings. *Id.* at 489. It found considerable need for actual notice:

> Creditors, who have a strong interest in maintaining the integrity of their relationship with their debtors, are particularly unlikely to benefit from publication notice. As a class, creditors may not be aware of a debtor's death or of the institution of probate proceedings. Moreover, the executor or executrix will often be, as is the case here, a party with a beneficial interest in the estate. This could diminish an executor's or executrix's inclination to call attention to the potential expiration of a creditor's claim. There is thus a substantial practical need for actual notice in this setting.

*Id.* When this need was weighed against the "inexpensive and efficient mechanism" of mail notice, the Court concluded that actual notice was required by the Due Process Clause.

There is a major similarity and a major difference between § 557(a) and the nonclaim statute in *Pope*. The similarity is that both statutes are triggered by action of the probate court. The difference is that § 557(a) is a general long-term statute of limitation unconnected to the claims process in probate court, or to the probate court at all. The nonclaim statute is of short duration and directly enforces the state's interest in resolution of the probate proceedings. Except for the "trigger," § 557(a) is more similar to the longer-time-period nonclaim statutes distinguished in *Pope* based on an analysis in Falender, *Notice to Creditors in Estate Proceedings: What Process is Due?*, 63 N.C.L. Rev. 659, 667–69 (1985).

We will assume for purposes of analysis that *Pope* applied retroactively to a limitation period that had expired at the time of the decision. See *Solomon v. Atlantis Development, Inc.*, 145 Vt. 70, 74, 483 A.2d 253, 256 (1984) (setting out standards for when decision is applied only prospectively); see also *In re Estate of Kopely*, 159 Ariz. 391, 394 n.3, 767 P.2d 1181, 1184 n.3 (Ct. App. 1988) (*Pope* applies to "matters pending when it was decided"); *Hanesworth v. Johnke*, 783 P.2d 173, 177 (Wyo. 1989) (*Pope* applies to probate proceedings not yet final on date *Pope* was decided).

■ Although the degree of state involvement is less with respect to § 557(a) than in *Pope's* nonclaim statute, we conclude it is sufficient to constitute state action under the Fourteenth Amendment. See generally Reutlinger, *State Action, Due Process, and the New Nonclaim Statutes: Can No Notice be Good Notice if Some Notice is Not*, 24 Real Prop., Prob. & Trust J. 433, 446 (1990). The probate court issues letters testamentary or letters of administration after notice by publication and hearing. See 14 V.S.A. §§ 902, 903. There is no notice of this action by the court or by the executor or administrator. As in *Pope*, "the legal proceedings themselves trigger the time bar" so that the statute is not self-executing and the Due Process Clause applies. *Pope*, 485 U.S. at 487.

■■ Once we look at the process due, however, we find a significantly different balance from that present in *Pope*. 12 V.S.A. § 557(a) is a true statute of limitation, the purpose of which "is to make necessary the bringing of an action within a reasonable time and thus prevent fraudulent and stale claims from being brought at a time when witnesses have died or disappeared and documentary evidence has been lost or destroyed." *Law's Adm'r v. Culver*, 121 Vt. 285, 287, 155 A.2d 855, 857 (1959). It is a remedial statute intended to avoid the harsh common law rule that actions abate on the death of the defendant. See *Cox v. Roth*, 348 U.S. 207, 210 (1955). While it sometimes shortens the limitation period within which a plaintiff may sue, it often operates to lengthen it. See generally *Estate of Harris v. Eichel*, 152 Vt. at 182–83, 565 A.2d at 1282.

Two features are particularly important in distinguishing § 557(a) from the nonclaim statute in *Pope*. In *Texaco, Inc. v.*

*Short*, 454 U.S. 516, 536 (1982), the case distinguished in *Pope*, the Court emphasized that a self-executing statute of limitations is not unconstitutional: "The Due Process Clause does not require a defendant to notify a potential plaintiff that a statute of limitations is about to run . . . ." The statute here is always more favorable to plaintiff than an equivalent survival statute which is wholly self-executing. Thus, the Legislature could have started the limitation period on defendant's death as is usually done in other states. Compare N.H. Rev. Stat. Ann. § 556:7, *quoted in Estate of Harris v. Eichel*, 152 Vt. at 183, 565 A.2d at 1282;[9] see also 14 V.S.A. § 1203(a)(2) (long-term nonclaim statute based on decedent's death). The Legislature has suspended the operation of the statute of limitation between death and appointment of the executor or administrator because the claimant cannot enforce a claim during this period. *Briggs v. Estate of Thomas*, 32 Vt. at 177. While this benefit to plaintiff does involve the state, there remains a large element of self-execution in the process, implicating the holding of *Texaco, Inc. v. Short*.

The second difference is the length of time involved. *Pope* relied upon the fact that "[a]s a class, creditors may not be aware of a debtor's death or of the institution of probate proceedings." *Pope*, 485 U.S. at 489. That may be true for a two-month limitation period in a nonclaim statute. We do not believe that a diligent plaintiff will fail to discover the death of a potential defendant after more than two years. Indeed, it is clear that plaintiff was aware that an estate had been opened in this case.

There are other differences that are particularly significant in this case. *Pope* involved a contract claim. The Court in *Pope* noted the executor's conflict of interest because an executor is often a beneficiary of the estate and unlikely to call attention to the expiration of a creditor's claim. *Id.* Indeed, delay or inaction by the executor would shorten or eliminate the period for response in *Pope*. Here, delay, if it has any effect, lengthens the limitation period. Moreover, the Legislature has excluded the

---

[9] The New Hampshire statute was amended in 1959 to reduce the limitation period from two years to one year and to change the "trigger" from death to "the original grant of administration." 5 N.H. Rev. Stat. Ann. § 556:7 (replacement ed. 1974). It is now similar to the Vermont statute.

tort claim involved here from the claims process; the only significance of notice would be that it would begin the running of the limitation period. Not only is the executor free from a conflict of interest with respect to that notice, he has no interest in it at all. This action, indeed, was being defended by an insurance company.

As in *Pope*, we recognize that it is feasible for the executor to give actual notice of his appointment to known or reasonably ascertainable creditors. This adds a notice step to the process that is not otherwise there. In *Pope*, the choice was between notice by publication and actual notice; here, we would require actual notice of an event where no notice has been given. We are more concerned, however, with requiring notice by an executor who risks nothing in not performing, as is true in this case. This concern is heightened when we gauge the effect of a mistake by the executor in failing to provide the proper notice to a creditor. In *Pope*, the effect is that the estate would have to honor a late *but not stale* claim. Here, the effect would be that plaintiff's claim could forever be brought. We believe that the state's interest in preventing stale claims is too great to take that risk.

▮ We conclude that the balance tips decidedly against forestalling indefinitely the commencement of the limitation period until defendant personally notified plaintiff of his appointment as executor. Accordingly, the operation of 12 V.S.A. § 557(a) does not deny plaintiff due process of law.

*Affirmed.*