Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/21/2023 09:07 AM CDT

Kayleen Sparks, appellant, v. David Mach,
Special Administrator of the Estate
of Leo Mach, deceased, appellee.

___ N.W.2d ___

Filed July 21, 2023.    No. S-21-1041.

1.  **Summary Judgment: Appeal and Error.** An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law. In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence.

2.  **Limitations of Actions.** The determination of which statute of limitations applies is a question of law.

3.  **Statutes.** Statutory interpretation presents a question of law.

4.  **Judgments: Appeal and Error.** When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court.

5.  **Decedents' Estates: Claims.** The Nebraska Probate Code provides two methods of presenting a claim against a decedent's estate: Under Neb. Rev. Stat. § 30-2486(1) (Reissue 2016), a claim can be presented by filing a written statement thereof with the clerk of the probate court, or under § 30-2486(2), a claim can be presented by commencing a proceeding against the personal representative in any court that has jurisdiction.

6.  **Decedents' Estates: Limitations of Actions.** Under the Nebraska Probate Code, the first statute of limitations to apply will accomplish a bar.

7.  **Statutes.** Absent anything to the contrary, statutory language is to be given its plain meaning, and a court will not look beyond the

statute or interpret it when the meaning of its words is plain, direct, and unambiguous.

8. **Decedents' Estates: Claims: Limitations of Actions.** Under Neb. Rev. Stat. § 30-2484 (Reissue 2016), the running of any statute of limitations, measured from some event other than the death of and subsequent advertisement for claims against a decedent, is suspended during the 2 months following the decedent's death but resumes thereafter as to claims not barred pursuant to any applicable statute of limitations.

9. **Decedents' Estates: Debtors and Creditors: Limitations of Actions.** The 2-month suspension in Neb. Rev. Stat. § 30-2484 (Reissue 2016) means that by reason of a debtor's death, 2 months is added to the normal period of limitations before a debt is barred.

10. **Decedents' Estates.** The Nebraska Probate Code should be liberally construed to make uniform the law among the various jurisdictions.

11. **Decedents' Estates: Claims.** The probate code does not authorize a claimant to present a claim against the estate by commencing an action against a former personal representative who has been discharged and whose appointment has been terminated.

12. ____: ____. Under Neb. Rev. Stat. § 30-2404 (Reissue 2016), a claim against a decedent's estate cannot be commenced before the county court has appointed a personal representative.

13. **Decedents' Estates: Actions.** Under Neb. Rev. Stat. § 30-2486(2) (Reissue 2016), an action against a decedent's estate is not commenced unless a claimant files a lawsuit against the personal representative of the estate.

14. **Decedents' Estates: Executors and Administrators: Statutes.** Because a personal representative is not a natural person, but an entity created by statute through a court order of appointment, when an estate is closed and the personal representative discharged, there is no viable entity or person to sue.

15. **Decedents' Estates: Executors and Administrators: Pleadings.** An otherwise valid amended complaint, filed after a complaint filed prematurely under Neb. Rev. Stat. § 30-2404 (Reissue 2016) but after the appointment or reappointment of a personal representative, is sufficient to commence a proceeding within the meaning of Neb. Rev. Stat. § 30-2486(2) (Reissue 2016).

16. **Limitations of Actions: Pleadings.** Under certain situations as set forth in Neb. Rev. Stat. § 25-201.02 (Reissue 2016), an amended complaint may relate back to the commencement date of an earlier complaint.

Petition for further review from the Court of Appeals, MOORE, RIEDMANN, and WELCH, Judges, on appeal thereto

from the District Court for Douglas County, Todd O. Engleman, Judge. Judgment of Court of Appeals reversed and remanded with directions.

William J. Pfeffer, of Pfeffer Law Offices, for appellant.

Kyle Wallor, of Lamson, Dugan & Murray, L.L.P., for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Cassel, J.

## I. INTRODUCTION

The Nebraska Court of Appeals held that Kayleen Sparks' action for damages arising from a motor vehicle accident was a "nullity," because the original complaint was filed against the other driver's closed estate and its discharged special administrator.[1] This appeal turns upon whether the defective filing could be "cured" upon reopening the estate, reappointing the special administrator, and then filing an amended complaint. If so, we must determine whether Sparks commenced the proceeding within the applicable statute of limitations under the Nebraska Probate Code (NPC).[2] Because we conclude that Sparks timely remedied the situation, we reverse.

## II. BACKGROUND

Because this appeal focuses on a statute of limitations, specific dates matter. Among them are the dates of the accident, the decedent's death, the filing of Sparks' complaint, the reappointment of a special administrator, and the other filings and service of process in the damage suit.

---

[1] See *Sparks v. Mach*, 31 Neb. App. 461, 470, 982 N.W.2d 834, 841 (2022).

[2] See Neb. Rev. Stat. §§ 30-401 to 30-406, 30-701 to 30-713, 30-2201 to 30-2902, 30-3901 to 30-3923, 30-4001 to 30-4045, 30-4101 to 30-4118, and 30-4201 to 30-4210 (Reissue 2016 & Cum. Supp. 2022).

## 1. Motor Vehicle Accident

On March 3, 2017, Sparks and the decedent, Leo Mach (Mach), were involved in a motor vehicle accident. Mach died on September 6 of unrelated causes, prompting the opening of his estate and the appointment of David Mach (David) as special administrator. In December 2019, Mach's estate was closed, and David was discharged as special administrator. It appears to be undisputed that David did not send Sparks a copy of any notice to creditors.

## 2. Lawsuit Against Mach's Estate

On February 24, 2021 (shortly before 4 years after the accident), Sparks filed a complaint in the district court against "DAVID MACH, Special Administrator for THE ESTATE OF LEO MACH," alleging Mach's negligence in the March 3, 2017, accident. The court issued a summons the same day the complaint was filed, on February 24. This was the first, but not the only, summons issued by the district court. The complaint did not allege that the complaint was seeking only to pursue liability insurance proceeds; instead, it was silent regarding that matter.

After filing the complaint, Sparks learned the estate was closed and David had been discharged as special administrator. Sparks filed an application in the county court to reopen the estate and reappoint David as special administrator.

On March 5, 2021 (4 years and 2 days after the date of the accident), the county court granted Sparks' application and reappointed David as special administrator.

On March 8, 2021, Sparks served David with the first summons and the original complaint. In response, David filed a motion to dismiss, alleging lack of personal jurisdiction, insufficiency of service of process, and failure to state a claim upon which relief could be granted.

On April 21, 2021, Sparks filed an amended complaint, asserting that although David had previously been discharged as special administrator, Mach's estate had been reopened

and David reappointed as special administrator. On the same date (April 21), the court issued a second summons.

Two days later, on April 23, 2021, David was served with the second summons and the amended complaint. On that same date, Sparks also filed a motion to again amend the complaint. These events occurred within 4 years and 2 months from the date of the accident.

The district court held two hearings on David's motion to dismiss and Sparks' motion to amend. Citing Nebraska case law, David argued that Sparks' original complaint was a legal nullity because it was filed prior to the reopening of the estate and reappointment of David as special administrator. Sparks countered that process was served only after the estate was reopened and David was reappointed. Sparks further argued that even if the original filing was improper, her amended complaint—which was filed after David's reappointment—should relate back to the original filing under Neb. Rev. Stat. § 25-201.02 (Reissue 2016). The court overruled David's motion to dismiss and sustained Sparks' motion to amend.

On June 1, 2021 (more than 4 years and 2 months after the accident), Sparks filed her second amended complaint and initiated service upon David and his attorney by certified mail and electronic service. In response, David filed an answer and a motion for summary judgment. David's answer noted that Mach's estate was not reopened, and he was not reappointed as special administrator, until March 5, 2021—2 days after the 4-year statute of limitations for negligence actions[3] had run.

### 3. Summary Judgment Order

Following a hearing, the district court entered an order granting David's motion for summary judgment and dismissing Sparks' action with prejudice. The court's decision turned on

---

[3] Neb. Rev. Stat. § 25-207 (Reissue 2016).

three issues. First, citing a specific provision[4] under the NPC and a Court of Appeals' decision,[5] it found that Sparks' attempt to commence an action on February 24, 2021, before David's reappointment as special administrator on March 5, rendered the action a "nullity." Second, the court stated that Sparks' action failed to comply with the 4-year statute of limitations for negligence actions, which the court found expired on March 3. Finally, the court rejected Sparks' argument that her second amended complaint should relate back to the date of the original filing. It stated: "Because [Sparks'] original Complaint is a legal nullity, there was not a pending action for [Sparks'] Second Amended Complaint to relate back to."

### 4. Motion to Reconsider and Vacate

Sparks filed a motion to reconsider and vacate regarding the dismissal of her action. She argued that the court erred in its interpretation of § 30-2404, because, she asserted, a suit was not "commenced" until the date of service. Sparks pointed out that David was served after the estate was reopened and David was reappointed as special administrator. Therefore, Sparks contended, the original filing was not a "nullity."

Following a hearing, the district court overruled Sparks' motion to reconsider or vacate and adhered to its order granting summary judgment and dismissing the action. Sparks filed a timely appeal to the Court of Appeals.

### 5. Court of Appeals' Decision

The Court of Appeals affirmed the district court's order. It considered three issues, which it characterized as matters of law.

First, it agreed with the district court's conclusion that Sparks' original complaint was a legal nullity. It explained, in part: "Nebraska appellate courts have long held that a

---

[4] § 30-2404.

[5] *Estate of Hansen v. Bergmeier*, 20 Neb. App. 458, 825 N.W.2d 224 (2013).

personal representative is not a natural person, but, rather, an entity created by statute through a court order of appointment."[6] Therefore, "when an estate is closed and the personal representative discharged, there is no viable entity or person to sue."[7] The court considered four prior cases[8] involving "claims" filed against closed estates and rejected Sparks' argument that this case was distinguishable. It reasoned:

> Although Sparks argues that she "quickly rectified the fact that the estate had been closed," . . . the fact remains that there was no estate open or special administrator appointed at the time the complaint was filed. Nor are we persuaded by the fact that David was served with the original complaint after he was reappointed as special administrator. The controlling fact remains that Sparks filed her original complaint, and thus commenced a proceeding to enforce a claim against Mach's estate, before the estate was reopened and David was reappointed. *Sparks' actions to rectify the situation occurred after the statute of limitations had run*.[9]

The appeals court did not elaborate on the applicable statute of limitations.

Second, it rejected Sparks' argument that the relation-back doctrine applied. It stated:

> Sparks is generally correct that her pleadings comply with the relation-back doctrine found in Neb. Rev.

---

[6] *Sparks v. Mach, supra* note 1, 31 Neb. App. at 466, 982 N.W.2d at 839 (citing *Pilger v. State*, 120 Neb. 584, 585, 234 N.W. 403, 404 (1931) ("[e]xecutors and administrators in Nebraska are creatures of statute")).

[7] *Sparks v. Mach, supra* note 1, 31 Neb. App. at 466, 982 N.W.2d at 839 (citing *Correa v. Estate of Hascall*, 288 Neb. 662, 850 N.W.2d 770 (2014), and *Estate of Hansen v. Bergmeier, supra* note 5).

[8] See, *Correa v. Estate of Hascall, supra* note 7; *Babbitt v. Hronik*, 261 Neb. 513, 623 N.W.2d 700 (2001); *Estate of Hansen v. Bergmeier, supra* note 5; *Mach v. Schmer*, 4 Neb. App. 819, 550 N.W.2d 385 (1996).

[9] *Sparks v. Mach, supra* note 1, 31 Neb. App. at 469-70, 982 N.W.2d at 841 (emphasis supplied).

Stat. § 25-201.02(1) (Reissue 2016). . . . However, the Nebraska Supreme Court has held that an amended complaint does not relate back to the original complaint under § 25-201.02 when the original complaint was a nullity. See, *Kelly v. Saint Francis Med. Ctr.*, 295 Neb. 650, 889 N.W.2d 613 (2017); *Reid v. Evans*, 273 Neb. 714, 733 N.W.2d 186 (2007).[10]

It concluded that § 25-201.02 does not allow for relation back to cure the defect that rendered the original complaint in this action a legal nullity. In other words, "[b]ecause Mach's estate was closed and the special administrator discharged, there was no action pending at the time of Sparks' original complaint and nothing for the amended complaint to relate back to."[11]

Third, the Court of Appeals found that summary judgment in David's favor was appropriate. It explained that because it had already determined that Sparks' original complaint was a nullity and that the relation-back doctrine did not apply, "there is no genuine issue as to any material facts and David is entitled to judgment as a matter of law."[12]

Sparks filed a timely petition for further review, which we granted. We directed the parties to submit supplemental briefing addressing the applicable statute or statutes of limitations. The parties promptly submitted supplemental briefs, which we have considered in resolving this appeal.

### III. ASSIGNMENTS OF ERROR

Sparks assigns that the Court of Appeals erred in finding that (1) the original complaint was a legal nullity, and any potential error was not rectified before the running of the statute of limitations, and (2) the amended complaint did not relate back to the original complaint.

---

[10] *Sparks v. Mach, supra* note 1, 31 Neb. App. at 470-71, 982 N.W.2d at 841.

[11] *Id.* at 472, 982 N.W.2d at 842.

[12] *Id.*

## IV. STANDARD OF REVIEW

[1] An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law. In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence.[13]

[2-4] The determination of which statute of limitations applies is a question of law.[14] Likewise, statutory interpretation presents a question of law.[15] When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court.[16]

## V. ANALYSIS

Sparks' negligence claim against Mach's estate is governed by the NPC, which provides that a claim, in respect to the estates of deceased persons, includes liabilities of the decedent whether arising in contract, in tort, or otherwise.[17] The parties' arguments hinge on several aspects of this complicated statutory scheme.

We begin by setting forth David's general "nullity" argument and Sparks' general response. We next discuss in detail numerous provisions of the NPC and the uniform act upon

---

[13] *Clark v. Scheels All Sports, ante* p. 49, 989 N.W.2d 39 (2023).

[14] *Doe v. McCoy*, 297 Neb. 321, 899 N.W.2d 899 (2017).

[15] *McGill Restoration v. Lion Place Condo. Assn.*, 313 Neb. 658, 986 N.W.2d 32 (2023).

[16] *In re Adoption of Faith F.*, 313 Neb. 491, 984 N.W.2d 640 (2023).

[17] See § 30-2209(4).

which these statutes are based, as well as relevant comments provided by the drafters of the uniform act. Finally, we address the parties' specific arguments regarding prior Nebraska appellate court cases and the application of the relation-back doctrine to Sparks' claim. Because the facts of this case are not in dispute, we address the issues on appeal as a matter of law.

## 1. David's "Nullity" Rationale

At oral argument, David iterated a concession, which is consistent with his briefing, that all of his arguments are based on a single premise. David contends that Sparks' purported failure to comply with § 30-2404 rendered her action a "nullity." The district court and the Court of Appeals agreed with David.

Section 30-2404 states, in part, that "[n]o proceeding to enforce a claim against the estate of a decedent or his successors may be revived or commenced *before the appointment* of a personal representative." (Emphasis supplied.) Under the NPC, the term "personal representative" includes a special administrator.[18] Thus, because Sparks' original complaint attempted to commence a proceeding against a *discharged* special administrator, David argues that § 30-2404 bars her claim. Moreover, based on his nullity argument and the date of the accident, David contends that "[Sparks'] claim is barred regardless of how one calculates the statute of limitations."[19]

In any event, the parties agree in their supplemental briefing that § 25-207 provides the applicable statute of limitations pursuant to a specific NPC provision[20] regarding claims for liability insurance proceeds, that § 25-207 allows 4 years from the accrual of the cause of action in which to commence the action, and that the cause of action accrued on the date

---

[18] See § 30-2209(33).

[19] Supplemental brief for appellee on petition for further review at 16.

[20] § 30-2485(c)(2).

of the accident on March 3, 2017. They disagree regarding the potential application of a 2-month "suspen[sion]" in § 30-2484.

Sparks maintains that, for purposes of the statute of limitations, the original complaint she filed on February 24, 2021, or the first amended complaint she filed on April 21 constituted necessary commencement of a proceeding against the decedent's estate. Sparks further argues that her efforts to "cure" any deficiency in the original complaint occurred prior to May 3 (4 years and 2 months after the accident)—the date on which Sparks asserts that the statute of limitations would have expired. Again relying on his nullity argument, David disputes that Sparks' efforts had this effect. David maintains that Sparks' only option was to file a new action before the statute of limitations had run.

## 2. PROBATE CODE FRAMEWORK

Before turning to the parties' specific arguments, we recall several statutes in the NPC bearing on claims and statutes of limitations, as well as certain provisions of the Uniform Probate Code (UPC), upon which the NPC statutes are modeled. We focus on three topics: proper presentation of claims against the estates of deceased persons, the potential application of several statutory bars, and the effect of the 2-month "suspen[sion]" in § 30-2484.

### (a) Presentation of Claim

[5] For purposes of any statute of limitations, the NPC instructs that the proper presentation of a claim under § 30-2486 is equivalent to commencement of a proceeding.[21] That section provides two methods of presenting a claim against a decedent's estate: Under § 30-2486(1), a claim can be presented by filing a written statement thereof with the clerk of the probate court, or under § 30-2486(2), a claim can be presented

---

[21] § 30-2484.

by commencing a proceeding against the personal representative in any court that has jurisdiction. As noted above, the term "personal representative" includes a special administrator.[22]

In this case, David argues that there is no evidence in the record establishing that Sparks filed a "written statement of the claim" with the county court clerk in compliance with § 30-2486(1). Although Sparks filed an application in the county court to reopen the estate and reappoint the special administrator, David suggests that that was insufficient for purposes of presenting a claim and protecting the statute of limitations. Instead, he argues, Sparks attempted to commence an action under § 30-2486(2) by filing a claim against the *discharged* special administrator of the decedent's estate, without the estate's being reopened. David maintains that this attempt was a nullity.

(b) Statutes of Limitations

To determine whether Sparks' action was a nullity, we first must determine which statute of limitations applied. In *Lenners v. St. Paul Fire & Marine Ins. Co.*,[23] the Court of Appeals provided a detailed discussion of the statutory bars that may have potential application under the NPC. We agree with the court's discussion there and draw upon it here.

The comment to the UPC section[24] upon which § 30-2484 was modeled points out that several statutes of limitations may have potential application in a particular case and that the first to apply controls: "[T]he regular statute of limitations applicable during the debtor's lifetime, the non-claim provisions of [UPC] Sections 3-803 and 3-804, and the three-year limitation of [UPC] Section 3-803 all have potential application to a claim. The first of the three to accomplish a bar

---

[22] See § 30-2209(33).

[23] *Lenners v. St. Paul Fire & Marine Ins. Co.*, 18 Neb. App. 772, 793 N.W.2d 357 (2010).

[24] See Unif. Probate Code § 3-802, 8 (part II) U.L.A. 266 (2013).

controls."[25] Section 30-2485 corresponds to UPC § 3-803,[26] and § 30-2486 generally tracks UPC § 3-804.[27]

[6] In addition to the regular statute of limitations for negligence actions, there are five provisions of the NPC that could act to impose a bar. Four of these provisions fall within the two categories identified in the comment—the nonclaim provisions and the 3-year limitation. There is one other nonclaim provision under yet another statute. The comment instructs us that the first statute to apply will accomplish a bar. We adopt the rationale of the comment and hold that under the NPC, the first statute of limitations to apply will accomplish a bar.

The first statutory bar, which applies only if the claim against the decedent arose before the decedent's death, is that of § 30-2485(a)(1). It bars claims not presented within 2 months after publication and mailing of notice to creditors of the estate.

The second statutory bar, which also applies only if the claim arose before death, is that of § 30-2485(a)(2). It bars claims not presented within 3 years after the decedent's death if proper notice to creditors has not been given.

The third statutory bar, under § 30-2485(b), applies to claims arising at or after the decedent's death and bars claims not presented within 4 months after the claim arose.

The fourth statutory bar flows from § 30-2486(3). It bars commencement of a proceeding to enforce a claim that has been presented by filing a statement of claim with the probate court, if the proceeding is commenced more than 60 days after the personal representative mailed a notice of disallowance.

The last statutory bar is set forth in § 30-2488(a). It applies where a notice of disallowance is given by the personal

---

[25] *Id*., comment, 8 (part II) U.L.A. at 266.

[26] Unif. Probate Code § 3-803, 8 (part II) U.L.A. 271 (2013).

[27] Unif. Probate Code § 3-804, 8 (part II) U.L.A. 300-01 (2013). But see *Lenners v. St. Paul Fire & Marine Ins. Co., supra* note 23 (observing Nebraska rejected one of UPC's methods for presentation of claim).

representative after a claim has been allowed and the claimant fails to commence a proceeding against the personal representative within 60 days after the mailing of the notice of disallowance.

Crucially, § 30-2485(c)(2) eliminates any potential application of the first three of these five statutory bars. Section 30-2485(c) states: "Nothing in this section[, i.e., § 30-2485,] affects or prevents: . . . (2) [t]o the limits of the insurance protection only, any proceeding to establish liability of the decedent or the personal representative for which he or she is protected by liability insurance."

Here, the parties agree in their supplemental briefs that Sparks' claim sought relief only as to liability insurance proceeds. Thus, § 30-2485(c)(2) renders inapplicable the potential bars of § 30-2485(a)(1), (a)(2), and (b).

We digress to observe that had Sparks alleged in her complaint or amended complaint that she was seeking only to establish liability of the decedent for which he was protected by liability insurance, the supplemental briefing here would have been eliminated or greatly simplified. Another decision of the Court of Appeals noted that the lawsuit there failed to allege that the claims being asserted were limited to recovery of only liability insurance coverage, and it suggested in dicta that that shortcoming would seem to be fatal.[28] Here, however, the parties' supplemental briefs both accept this exception from the nonclaim statutes and agree that Sparks' claim is limited to the proceeds of the decedent's liability insurance.

Returning to our discussion of the statutory bars, Sparks argues that the absence of a notice of disallowance of her claim renders inapplicable the other two of these five statutory bars. Section 30-2486(3) provides a bar for failure to commence a proceeding within 60 days after the personal representative has mailed a notice of disallowance when a claim has been presented by filing a statement of claim with

[28] *Estate of Hansen v. Bergmeier, supra* note 5.

the probate court. And § 30-2488(a) provides a comparable bar for a claim disallowed after being first allowed, where the claimant fails to commence a proceeding within 60 days after mailing of the notice of disallowance. Here, it appears to be undisputed that David has neither filed nor mailed a notice of disallowance. Thus, there has been no triggering of the potential bars of § 30-2486(3) or § 30-2488(a)—the only remaining possibilities under the NPC.

This leaves only the regular statute of limitations as a possible bar.

### (c) 2-Month "Suspension" in § 30-2484

We next consider the potential application and effect of the 2-month period referred to in § 30-2484, which Sparks relies upon in her briefing. Section 30-2484 provides, in relevant part, that the running of certain statutes of limitations is "suspended" for a 2-month period as to claims not subject to the statutory bars discussed above. It states:

> The running of any statute of limitations measured from some other event than death and advertisement for claims against a decedent is suspended during the two months following the decedent's death but resumes thereafter as to claims not barred pursuant to the sections which follow[, i.e., § 30-2485(a)(1), (a)(2), and (b); § 30-2486(3); and § 30-2488(a)].[29]

This provision is modeled after a similar provision in the UPC, which states that the running of such statutes of limitations is suspended for a 4-month period.[30] Nebraska, however, adopted a shorter period of 2 months.

Turning to Sparks' arguments, she first asserts that the 2-month period applies, because "[t]he running of the statute of limitations is measured as of the date of the accident when [Sparks] incurred her injuries, and is not measured by

---

[29] § 30-2484.

[30] See Unif. Probate Code, *supra* note 24, § 3-802(b), 8 (part II) U.L.A. 266.

the date of death of the decedent or advertisement for claims against the decedent."[31] Because we have determined that Sparks' action is not subject to the nonclaim statutes and that the regular statute of limitations is the only applicable bar, we agree that the 2-month period in § 30-2484 applies.

Next, we consider the effect of the 2-month period. Sparks argues that the regular statute of limitations "was *tolled* during the two months following the decedent's death and resumed thereafter as to claims not barred pursuant to the subsequent [NPC] statutes."[32] Based on her interpretation of § 30-2484, Sparks suggests that the statute of limitations ran 4 years and 2 months after the March 3, 2017, accident, on May 3, 2021. We have previously articulated that concept.[33] But there, we did so in dicta.

In support of her argument, Sparks points to the comment to the UPC section upon which § 30-2484 is modeled. It states, in relevant part: "This section means that four months is added to the normal period of limitations by reason of a debtor's death before a debt is barred."[34]

One can envision a statute that merely precludes enforcement of the statute of limitations for a specific period, but during which the statute continues to run. Although neither party contends that § 30-2484 is such a statute, we must consider the possibility.

Viewing the word "suspend" in isolation does not answer the question. Dictionary definitions[35] contemporaneous with the NPC's adoption generally focus on a temporary period of delay.

---

[31] Supplemental brief for appellant on petition for further review at 9.

[32] *Id.* (emphasis supplied).

[33] See *Babbitt v. Hronik, supra* note 8.

[34] Unif. Probate Code, *supra* note 24, comment, 8 (part II) U.L.A. at 266.

[35] See, e.g., Webster's New Twentieth Century Dictionary of the English Language, Unabridged 1837 (2d ed. 1973); The American Heritage Dictionary of the English Language 1296 (1969); Black's Law Dictionary 1615-16 (rev. 4th ed. 1968).

[7-9] Here, in context, the meaning of the word "suspended" becomes clear. It is preceded by the phrase "[t]he *running* of any statute of limitations" and followed by the phrase "but *resumes* thereafter," which indicates that the running of the statute of limitations stops at the decedent's death and resumes after the 2-month "suspen[sion]."[36] Absent anything to the contrary, statutory language is to be given its plain meaning, and a court will not look beyond the statute or interpret it when the meaning of its words is plain, direct, and unambiguous.[37] We hold that under § 30-2484, the running of any statute of limitations, measured from some event other than the death of and subsequent advertisement for claims against a decedent, is suspended during the 2 months following the decedent's death but resumes thereafter as to claims not barred pursuant to any applicable statute of limitations. Further, the 2-month suspension in § 30-2484 means that by reason of a debtor's death, 2 months is added to the normal period of limitations before a debt is barred.

[10] Our interpretation promotes uniformity in two ways. First, several other states with comparable probate code statutes have reached similar conclusions.[38] Second, our reading of the statute does not differ from the UPC's comment. Thus, it is consistent with the idea that the NPC should be liberally construed to make uniform the law among the various jurisdictions.[39]

---

[36] § 30-2484 (emphasis supplied).

[37] *Wisner v. Vandelay Investments*, 300 Neb. 825, 916 N.W.2d 698 (2018).

[38] See, e.g., *Hamilton v. Blackman*, 915 P.2d 1210 (Alaska 1996); *Matter of Estate of Stirling*, 537 N.W.2d 554 (N.D. 1995), *disapproved on other grounds, Olson v. Estate of Rustad*, 831 N.W.2d 369 (N.D. 2013); *Matter of Estate of Chase*, 125 Ariz. 270, 609 P.2d 85 (Ariz. App. 1980); *Howland v. Estate of Beardslee*, No. 206796, 1999 WL 33438130 (Mich. App. July 30, 1999). See, also, *Martel v. Stafford*, 157 Vt. 604, 603 A.2d 345 (1991) (discussing purpose of suspension period under UPC).

[39] See § 30-2202(a) and (b)(4).

Here, we conclude that with the 2-month extension of the
4-year limitations period by operation of § 30-2484, Sparks'
cause of action would have been time barred after May 3,
2021. Thus, the crux of this appeal is whether the actions taken
by Sparks before May 3 could "cure" the defect in the origi-
nal filing.

### 3. Filing Claim Before Reopening of Estate

In her first assignment of error, Sparks assigns that the
Court of Appeals erred in finding that the original complaint
was a legal nullity and that any potential error was not recti-
fied before the running of the statute of limitations. That said,
Sparks recognizes that prior Nebraska appellate court decisions
have rejected "claims" that were filed against closed estates.
David maintains that § 30-2404 bars Sparks' action, because
the original complaint attempted to commence a proceeding
against a *discharged* special administrator.

[11-14] Nebraska law is clear that the probate code does
not authorize a claimant to present a claim against the estate
by commencing an action against a former personal represent-
ative who has been discharged and whose appointment has
been terminated.[40] Under § 30-2404, which lies at the heart of
David's nullity rationale, a claim against a decedent's estate
cannot be commenced before the county court has appointed
a personal representative.[41] And under § 30-2486(2), an action
against a decedent's estate is not commenced unless a claim-
ant files a lawsuit against the personal representative of the
estate.[42] We have previously stated that because a personal
representative is not a natural person, but an entity created by
statute through a court order of appointment, when an estate

---

[40] *Mach v. Schmer, supra* note 8.

[41] See *Babbitt v. Hronik, supra* note 8.

[42] *Id.*

is closed and the personal representative discharged, there is no viable entity or person to sue.[43]

But the Nebraska appellate courts have not previously articulated whether a "claim" filed against a discharged personal representative can be remedied—after the reopening of the estate and reappointment of the personal representative—by filing an amended complaint within the statute of limitations. The NPC is silent on this issue.

In addressing David's nullity argument, the Court of Appeals primarily relied upon four cases.[44] Sparks contends that the facts here are distinguishable. More specifically, Sparks argues that the Court of Appeals' decision "creates an unwarranted, incurable error, while simultaneously suggesting that the error is curable but not successfully cured in the particular case."[45] Based on his nullity argument, David maintains that the only way for Sparks to "cure" the defect was to timely file a separate action after the estate was reopened and the special administrator was reappointed.

To determine whether Sparks' situation is distinguishable, we revisit the cases relied upon by the Court of Appeals.

In two of the cases, *Mach v. Schmer*[46] and *Estate of Hansen v. Bergmeier*,[47] the deceased tortfeasor's estate was never reopened and the personal representative was never reappointed. In those cases, the Court of Appeals essentially reasoned that because the estate remained closed throughout the litigation, there was no legal entity to sue. Additionally, in *Estate of Hansen*, the court reasoned that the statute of limitations had run. Thus, summary judgment in the former personal representatives' favor was appropriate.

---

[43] *Correa v. Estate of Hascall, supra* note 7.

[44] See, *id.*; *Babbitt v. Hronik, supra* note 8; *Estate of Hansen v. Bergmeier, supra* note 5; *Mach v. Schmer, supra* note 8.

[45] Brief for appellant in support of petition for further review at 3.

[46] *Mach v. Schmer, supra* note 8.

[47] *Estate of Hansen v. Bergmeier, supra* note 5.

Here, Sparks successfully moved to reopen the estate and reappoint the special administrator within the statute of limitations. To that extent, we agree that her case is distinguishable from *Schmer* and *Estate of Hansen*.

The other two cases, *Babbitt v. Hronik*[48] and *Correa v. Estate of Hascall*,[49] are more similar to Sparks' situation. In those cases, the estate was reopened and the personal representative was appointed (or reappointed) during the litigation. Nonetheless, the actions failed due to other defects.

In *Babbitt*, the plaintiff sued a decedent individually and apparently learned after filing the complaint that the decedent had died.[50] The plaintiff later served the reappointed personal representative the complaint, which still named only the decedent individually as the defendant. We stated: "Although the personal representative was reappointed, we conclude that an action against [the decedent's] estate was never commenced because the only petition filed by [the plaintiff] was against [the decedent] individually and not against the personal representative. The action brought against [the decedent] individually was a nullity."[51] We further noted that by the time the plaintiff requested the reappointment of the personal representative, her claim was time barred by more than a month under §§ 25-207 and 30-2484.

Here, Sparks did not sue the decedent individually. Each iteration of Sparks' complaint named David in his capacity as special administrator of Mach's estate. Additionally, Sparks requested the reappointment of the special administrator prior to the running of the statute of limitations. Thus, we agree that the facts here are distinguishable from *Babbitt*.

In *Correa*, the plaintiff sued the former personal representative and then apparently learned that the estate was

---

[48] *Babbitt v. Hronik, supra* note 8.

[49] *Correa v. Estate of Hascall, supra* note 7.

[50] *Babbitt v. Hronik, supra* note 8.

[51] *Id.* at 514, 623 N.W.2d at 702.

previously closed.[52] Citing *Estate of Hansen*, we explained that "[the plaintiff] failed to properly bring suit against the estate or the personal representative, because the estate had been closed and the personal representative had been discharged."[53] We continued: "No doubt understanding her legal position, [the plaintiff] filed an emergency motion to reopen the estate and assign a special administrator for purposes of service, which was granted. The newly appointed special administrator was served with the complaint on June 28, 2013."[54] We then stated:

But this was insufficient to save [the plaintiff's] suit. Under Neb. Rev. Stat. § 25-217 (Reissue 2008), "[a]n action is commenced on the date the complaint is filed with the court," but "shall stand dismissed without prejudice as to any defendant not served within six months from the date the complaint was filed." In this case, [the plaintiff's] suit was not served on the new special administrator within 6 months, or by March 14, 2013, and thus it stood dismissed without prejudice. The district court lacked jurisdiction over [the plaintiff's] subsequent motions, and this court lacks jurisdiction over [the] appeal.[55]

Relevant to this appeal, we further noted that any "claim" against the estate in that case was untimely.

We again agree that Sparks' case is distinguishable. Unlike the plaintiff in *Correa*, Sparks served the reappointed special administrator within 6 months of filing her "claim." To the extent that the original summons (issued before reappointment) was a nullity, the second summons—issued and served after reappointment—did not share that defect. Thus, the action was not dismissed by operation of law under § 25-217.

---

[52] *Correa v. Estate of Hascall, supra* note 7.

[53] *Id.* at 666, 850 N.W.2d at 774.

[54] *Id.* at 667, 850 N.W.2d at 774.

[55] *Id.* at 667, 850 N.W.2d at 774-75.

Because the fatal defects in the prior cases are not present here, we reject David's nullity rationale. We certainly agree that Sparks' February 24, 2021, complaint was not effective and, in that sense, was a nullity. But we must determine whether Sparks' attempts to remedy the situation amounted to the valid commencement of an action within the statute of limitations.

We determined above that the applicable limitations period ran 4 years and 2 months after the date of the March 3, 2017, accident—in other words, on May 3, 2021. This is significant.

[15] Upon our review of the record, the estate was reopened and the special administrator was reappointed before May 3, 2021. Likewise, Sparks subsequently filed the first amended complaint and served a summons before May 3. We hold that an otherwise valid amended complaint, filed after a complaint filed prematurely under § 30-2404 but after the appointment or reappointment of a personal representative, is sufficient to commence a proceeding within the meaning of § 30-2486(2). Therefore, Sparks' amended complaint validly commenced a proceeding against the newly reappointed special administrator under § 30-2486(2).

It may be that the amended complaint would more properly have been considered a supplemental pleading under Neb. Ct. R. Pldg. § 6-1115(d), which requires leave granted upon motion.[56] Sparks' amended complaint added the events of reopening and reappointment, which had not occurred at the time of her original complaint. The commentators discuss the confusion between an amended complaint and a supplemental pleading, noting that prejudice to an opposing party is doubtful and observing that the distinction is sometimes completely ignored.[57]

---

[56] See John P. Lenich, Nebraska Civil Procedure, § 15:15 (2023).

[57] See, *id.*; 6A Charles Alan Wright et al., Federal Practice and Procedure § 1504 (2010).

The only question remaining is whether the relation-back doctrine applied to Sparks' second amended complaint, which she filed after May 3, 2021.

## 4. Relation Back

Sparks assigns that the Court of Appeals erred in finding that the amended complaint did not relate back to the original complaint. Reading her assignment literally, we disagree. Our rationale above depends upon timely commencement by the first amended complaint. Because we have determined that the first amended complaint was timely, it is not necessary that it relate back to the original complaint.

[16] But there is also a question regarding the effect of her second amended complaint, which was filed after the extended statute of limitations. Under certain situations as set forth in § 25-201.02, an amended complaint may relate back to the commencement date of an earlier complaint.[58]

Here, the Court of Appeals observed that Sparks was "generally correct" that her pleadings met the requirements under § 25-201.02.[59] But it ultimately concluded, based on David's nullity argument, that the relation-back doctrine did not apply. Had Sparks not remedied the situation within the statute of limitations, we would agree with the Court of Appeals' conclusion.

On these facts, we have determined that Sparks validly commenced a proceeding upon filing the first amended complaint within the statute of limitations. Sparks' second amended complaint met the requirements for relation back under § 25-201.02. Accordingly, we conclude that Sparks' second amended complaint relates back to the date of the first amended complaint.

---

[58] *Correa v. Estate of Hascall, supra* note 7.

[59] *Sparks v. Mach, supra* note 1, 31 Neb. App. at 470, 982 N.W.2d at 841.

## VI. CONCLUSION

We conclude that Sparks' first amended complaint, which she filed after the decedent's estate was reopened and the special administrator was reappointed, validly commenced a proceeding within the applicable limitations period. Therefore, the Court of Appeals erred in determining that Sparks' actions to cure the defect in filing took place after the statute of limitations had run. Finally, because the Court of Appeals' discussion of Sparks' relation-back argument was premised solely upon its determination that Sparks' action was a nullity, it was also incorrect. We reverse the decision of the Court of Appeals and remand the cause to that court with directions to reverse the judgment of the district court and remand the cause to that court for further proceedings consistent with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.